**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

**BENJAMIN LIGERI**
**CENTRAL CONCEPTS, INC**
**TRADEMARK HOLDINGS, LLC**
**GLOBAL SPECIALITY PRODUCTS, LLC** **DOCKET NO. 3:23-cv-00603**
**MEDCARE LLC**
**Plaintiffs,**

**vs**
**AMAZON.COM, INC**
**AMAZON, LLC**
**AMAZON SERVICES, LLC**
**AMAZON MEXICO SERVICES, INC**
**AMAZON BUSINESS PAYMENTS, INC**
**AMAZON PAYMENTS, INC**
**AMAZON CAPITAL SERVICES, INC,**
**Defendants**

# MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO MOTION TO COMPEL ARBITRATION AND CHANGE VENUE

FOR THE PLAINTIFFS,
BENJAMIN J LIGERI
CENTRAL CONCEPTS, INC
TRADEMARK HOLDINGS, LLC
GLOBAL SPECIALITY PRODUCTS, LLC
MEDCARE, LLC

By:/s/ Paulus Chan
Paulus H. Chan, Esq.
157 Forest Hill Road,
North Haven CT 06473
Tel: (860) 250-9536
Fax: (860) 631-1111
Email: phc_ssg@yahoo.com

Dated this 6th day of July 2023 at
New Haven, Connecticut

# TABLE OF CONTENTS

I. Relevant Facts....................................................................................1

A. Introduction.................................................................................... 1

B. Trademark Infringement is Not Subject to ArbitrationThe Facts ..........1

C.The Facts..............................................................................................1

D.Plaintiffs are Not "Third Party Sellers" Subject to Arbitration.................2

E. The Facts of the Verified Complaint Remain Undisputed – the BSA is Invalid and Unenforceable ..........................................................................3

F. Defendants' Declaration is Inaccurate and False.................................3

II. Law and Argument.................................................................................5

A. Standard of Review..................................................................................5

B. There is No Credible Evidence of any Enforceable Arbitratrion Contract for the Plaintiffs' Claims, which Are Driven by the Moving Force of Trademark Infringement..............................................................................................6

C. The Facts Stated by the Defendants are Not True, and the Plaintiffs Did Not Agree to the Terms of Service..................................................... 8

D. Even if Ligeri Did Execute the Arbitration Agreement, Which He Did Not, the Defendants Unilaterally Changed all Global Terms of Performance Such that No Meeting of the Minds Existed, and this court is therefore the Proper Forum...........................................................................................................9

E. The BSA Is a Product of Fraud and an Unconscionable Adhesion Contract.........................................................................................................11

F. Binding Arbitration is Inadeduate to Protect Irreparable Harm suffered by the Plaintiffs....................................................................................................15

G. The Vagueness in the Agreement, Even if We Entertain its Validity (Which We Should Not), Should be Construed in Favor of Court Action...............17

III. Conclusion ........................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

### Federal Cases

*Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)....................................5-6

*Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 130 (2d Cir. 2004)........16

*In re Am. Exp.*, 672 F.3d at 128.......................................................................5

*McAllister v. Conn. Renaissance Inc.*, No. 3:10cv1488 (WWE), 2011 WL 1299830, at *3 (D.Conn. Apr. 5, 2011).........................................................................................6

*Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995)...................6

*Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)......16

### Conn. State Cases

*American Oil Co. v. Valenti, 179 Conn. 349, 358–59, 426 A.2d 305 (1979)*.............7

*Cendant Corp. v. Commissioner of Labor, 276 Conn. 16, 31, 883 A.2d 789 (2005)*.......................................................................................................................18

*Cheshire Mortgage Service, Inc. v. Montes*, 223 Conn. 80, 89, 612 A.2d 1130 (1992)......................................................................................................................14

*Connecticut Light & Power Co. v. Gilmore*, 289 Conn. 88, 116, 956 A.2d 1145 (2008)...................................................................................................................7, 8

*Elgar v. Elgar,* 238 Conn. 839, 847 n.8 (Conn. 1996)........................................9-10

*Federal Deposit Ins. Corp. v. Carabetta*, 55 Conn. App. 376. (Conn. App. 1999)........................................................................................................................7

*Fortier v. Newington Group, Inc.*, 30 Conn. App. 510 A.2d 1321, cert. denied, 225 Conn. 911, 655 A.2d 823 (1993).............................................................................8

*Heights Condominium Assn., Inc. v. Local Land Development, LLC*, 273 Conn. 724, 735, 873 A.2d 898 (2005)...........................................................................18-19

*Lostritto v. Community Action Agency of New Haven, Inc., 269 Conn. 10, 20, 848 A.2d 418 (2004)*......18

*Milford Bank v. Phoenix Contracting Group, Inc*., 143 Conn. App. 519, 532–33, 72 A.3d 55 (2013)......6

*New England Savings Bank v. Bedford Realty Corp*., 246 Conn. 594, 600–601, 717 A.2d 713 (1998)...... 7

**New York State Cases**

*Gillman v. Chase Manhattan Bank, N.A., 73 N.Y.2d 1, 10, 534 N.E.2d 824, 537 N.Y.S.2d 787 (1988)*......14

*Sablosky v. Edward S. Gordon Co.*, 73 N.Y.2d 133, 138, 535 N.E.2d 643, 538 N.Y.S.2d 513 (1989)......13-14, 15

**Federal Statutes**

9 USC §2...... 5, 6, 18

15 USC §2......1

15 USC §§1115-1121......1

**State Statutes**

Conn. Gen. Stat §35-1......1

Conn. Gen Stat §52-59b......11

**Other Authorities**

J. Thomas McCarthy, Are Preliminary Injunctions Against Trademark Infringement Getting Harder to Achieve?, 14 Intell. Prop. L. Bulletin. 1, 1 (2009)......15-16

Thomas M. McCarthy , 5 McCarthy on Trademarks and Unfair Competition § 30:47 (4th ed. 2010)......15-16

Restatement (Second) of Conflict of Laws (1971)......11

Conn. Code Evid. § 8-4......8

The Plaintiffs respectfully object to the Defendants' motion to compel arbitration or in the alternative, transfer of this action, as follows:

**I. Relevant Facts**

A. Introduction

Plantiff Ligeri licenses to his co-Plaintiffs and other wholesalers, Trademarks for use as Amazon Merchants. They are not all operating, as Defendants mischaracterize it, as "third party sellers" bound to arbitration. The truth is, in fact, that the Plaintiffs have primarily trademark infringement claims based on the Defendants' infringement of their intellectual property rights derived from ownership and licensing agreements that the Amazon Platform has no authority to regulate.

B. Trademark Infringement is Not Subject to Arbitration

Plaintiffs plead Lanham Act claims for trademark infringement in Count One (15 USC §§1115-1121, inclusive), for which they seek injunctive relief. Plaintiffs' Monopolization Claims for which they seek injunctive relief are alleged in Count Ten, and said injunctive relief is of a prohibitory nature, in essence, seeking to restrain Defendants' per se Section 1 violations, 15 USC § 2 monopolization violations, and §2 conspiracy to monopolize violations. Count Thirteen pursuant to Connecticut's Uniform Trade Secrets Act, seeking relief under CGS §§35-51 through 35-53, inclusive.

C. The Facts

Amazon tself publishes terms it purports to subject its merchants to, a copy of which is appended hereto as Exhibit A. Specifically, §8.2 of the Amazon Business

Accounts Terms and Conditions currently states, in addition to claiming arbitration as binding on merchants, "We and you both agree that you or we may bring suit in court to enjoin infringement or other misuse of intellectual property rights." The Instant Matter before this court is precisely such a suit – one based primarily on trademark infringement and to the other unlawful ends for which the Complaint cogently, precisely and in painstaking detail pleads. Moreover, §18 of Defendant's Exhibit B (ECF 24-4, p. 8) itself concedes "...you or we may bring suit in the Governing Courts to enjoin infringement or other misuse of intellectual property rights." This is, of course, this exact suit to enjoin infringement and other misuse of intellectual property rights.

D. Plaintiffs are Not "Third Party Sellers" Subject to Arbitration

The Defendants claim, falsely, that all of the Plaintiffs are "third party sellers" and automatically bound to arbitration and the terms of service. The Defendants' Declarant claims to be familiar with the computerized business records of the Defendants but does not satisfy any of the requirements to meet the Computerized Business Records Exception to the Hearsay Rule. Moreover, the truth of the matter as illustrated in the Plaintiff's detailed affidavit further demonstrates that the Defendants' Declarant is in fact not at all familiar with their own business records and computerized systems for maintaining them.

E. <u>The Facts of the Verified Complaint Remain Undisputed – the BSA is Invalid and Unenforceable</u>

Nothing the Defendants claim at all, addresses the matters within the four corners of the Verified Complaint[1] relevant to the unconscionable Terms of Service/BSA. Specifically, nothing the Defendants have submitted so far challenges anything in ¶¶59-66 (facts demonstrating the elements of an unenforceable adhesion agreement), ¶¶66-82 (the general activities of the Defendants that infringe the Plaintiffs' Marks) or ¶¶52-58 (setting forth the fraudulent inducement of the Plaintiffs to acquiesce to the Defendants to act to their direct economic injury and to the infringement of their Marks). Moreover, the Verified Complaint also includes a Count for Fraud, which the Defendants have also opted to not at all respond to in any factual or legal way. The Verified Complaint alone creates material disputes of fact that require the Court to deny the Motion to Compel Arbitration or Change of Venue.

F. <u>Defendants' Declaration is Inaccurate and False</u>

Further still, the Plaintiffs set forth the falsity of the Defendants' Declaration in painstaking detail. The Declarant states at ¶4, falsely, " According to Amazon’s records, Plaintiff Benjamin Ligeri (“Ligeri”) registered his four third-party seller accounts." (sic) This statement  is totally false. Plaintiffs "...came to own and acquire these seller accounts." Plaintiff's Affidavit, ¶4. Moreover, Jasmine Alcantara created the account Health and

1 Bookmarked in PDF for the Court's convenience and quick reference.

Household at the time under the name Prime Shipping Direct which was later renamed Health and Household and much later in 2020 acquired by Central Concepts, Inc. Id, ¶4. Another individual created the account Vanguard which was later sold to Global Specialty Products after a long period of operation, and Global was later purchased by Plaintiff Central. Id ¶5. Professor Basil Mignacca created the account now known as Twin Horses under the business formation New England Surgical Inc, a company the Plaintiff never had any interest in nor ever worked for, and was purchased recently by Trademark Holdings LLC, and Plaintiffs still never gained access to that account. Id, ¶6 Medcare was created by Stephen Mignacca and ultimately purchased by Medcare LLC. Id, ¶7 Plaintiff Ligeri had no knowledge of the Twin Horses Account even existing until 2017, where he learned about it when he came to work for the company that owned it. Id, ¶8

The Defendants' Declarant's familiarity with the very business model of Amazon evinces a complete absence of familiarity with its own systems and software - and even its own business model. Plaintiffs, like the vast majority of small businesses similarly situated, operate like many bulk buyers including companies like THRASIO which acquire Amazon brands and companies to ultimately consolidate - just like Amazon does, but on a much smaller scale. Id, ¶11 If Amazon were to buy a competitor, it does not subject it to the competitor's terms of use. Similarly, the acquisitions of bulk products and IP licensing agreements that give the Plaintiffs rights of account access do not bind them to the terms of use either. Id, ¶11

The boxes indicated by the Defendants' Declaration were presumably checked

(although still not proven by any evidence) long before the Plaintiffs arrived on the Amazon scene, and several instances, even knew of the existence of the accounts being created. Still, the Defendants were happy to continue collecting Plaintiffs' trade secrets, bank account credentials, vendor lists, pricing strategies and other information necessary to tie up and lock up access to the use of Plaintiffs' Marks for many years – and directly profit from doing so. Id, ¶¶14-16 Indeed, had advance knowledge of this plan by the Defendants been known to the Plaintiffs, the Terms would never have been agreed to overtly (which they were not) or acquiesed to at all. Id, ¶17 The Defendants further agree with ¶18 of the Plaintiffs' Affidavit that the Terms of Service were authored, offered and drafted by Defendants on a unilateral take it or leave it basis.

## II. Law and Argument

### A. Standard of Review

The applicable statute states, "A written provision in any maritime transaction or contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 USC §2.

In this Circuit, courts follow a two-part test to determine whether claims are subject to arbitration considering "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp*., 672 F.3d at 128. In the context of a motion to

compel arbitration brought under the FAA, courts apply "a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003); see also *McAllister v. Conn. Renaissance Inc*., No. 3:10cv1488(WWE), 2011 WL 1299830, at *3 (D.Conn. Apr. 5, 2011) (applying the same standard in the context of a motion to compel arbitration under an employment arbitration agreement of federal statutory claims, including a Title VII claim). The party seeking an order compelling arbitration must "substantiate [its] entitlement [to arbitration] by a showing of evidentiary facts" that support its claim that the other party agreed to arbitration. *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." Id. If the evidence suggests a genuine issue of material fact, the district court must summarily proceed to trial. *Bensadoun*, 316 F.3d at 175 (citing 9 USC § 4)

B. <u>There is No Credible Evidence of any Enforceable Arbitratrion Contract for the Plaintiffs' Claims, which Are Driven by the Moving Force of Trademark Infringement</u>

As a preliminary matter, *Milford Bank v. Phoenix Contracting Group, Inc*., 143 Conn. App. 519, 532–33, 72 A.3d 55 (2013) sets forth the requirements to admit the type of records the Defendants ask the Court to consider, which go to the ability of the Court to verify and authenticate statements ordinarily indamissible under the Hearsay Rule. ''The proponent need not produce as a witness the person who made the record or show that such person is unavailable but must establish that [1] the record was made in the regular

course of any business, and [2] that it was the regular course of such business to make such writing or record [3] at the time of such act, transaction, occurrence or event or within a reasonable time thereafter.'' (Internal quotation marks omitted.) Id., 535; see also C. Tait & E. Prescott, Connecticut Evidence (5th Ed. 2014) § 8.28.4, p. 600. Our Supreme Court has explained that the rationale for this exception ''derives from the inherent trustworthiness of records on which businesses rely to conduct their daily affairs.'' (Internal quotation marks omitted.) *Connecticut Light & Power Co. v. Gilmore*, 289 Conn. 88, 116, 956 A.2d 1145 (2008); see generally *New England Savings Bank v. Bedford Realty Corp*., 246 Conn. 594, 600–601, 717 A.2d 713 (1998) (tracing common-law and statutory origins of business records exception).

The Defendants go further by introducing copies of a system generated prompt and also conceding that the computerized system at issue is creating, storing and retrieving business records. This adds a second layer of analysis the Court must undertake to satisfy the *Computerized* Business Records Exception to the Hearsay Rule. The proponent of the computer generated business records ''must establish that the basic elements of the computer system are reliable.'' *Federal Deposit Ins. Corp. v. Carabetta*, 55 Conn. App. 376. (Conn. App. 1999) The genesis of the second part of the test dates back to *American Oil Co. v. Valenti*, 179 Conn. 349, 358–59, 426 A.2d 305 (1979), in which the Connecticut Supreme Court noted that ''[b]usiness records that are generated by computers present structural questions of reliability that transcend the reliability of the underlying information that is entered into the computer. Computer machinery may make

errors because of malfunctioning of the hardware, the computer's mechanical apparatus. Computers may also, and more frequently, make errors that arise out of defects in the software, the input procedures, the data base, and the processing program. . . . In view of the complex nature of the operation of computers and general lay unfamiliarity with their operation, courts have been cautioned to take special care to be certain that the foundation is sufficient to warrant a finding of trustworthiness and that the opposing party has full opportunity to inquire into the process by which information is fed into the computer.'' (Citations omitted; internal quotation marks omitted.) See *Connecticut Light & Power Co. v. Gilmore, supra*, 116–18; Conn. Code Evid. § 8-4, commentary (effective August 1, 2015), 76 Conn. L.J., No. 49, p. 31B (June 2, 2015).

Accordingly, even if the Defendants' Declaration was truthful (and it is not), it isn't admissible.

C. The Facts Stated by the Defendants are Not True, and the Plaintiffs Did Not Agree to the Terms of Service

''In order for an enforceable contract to exist, the court must find that the parties' minds had truly met. . . . If there has been a misunderstanding between the parties, or a misapprehension by one or both so that their minds have never met, no contract has been entered into by them and the court will not make for them a contract which they themselves did not make.'' (Citations omitted; internal quotation marks omitted.) *Fortier v. Newington Group, Inc.*, 30 Conn. App. 510 A.2d 1321, cert. denied, 225 Conn. 911, 655 A.2d 823 (1993).

This dispute, on a good day, is a radical departure from how the Parties even

expected the Amazon platform to work. A closer look reveals that Amazon does not even agree with itself. Its own professed terms allow the Trademark Disputes, the core essence of the claims of the Plaintiffs, to proceed. The Defendants have addressed none of the contract formation issues well documented in the Verifed Complaint that include fraud, negligent misrepresentation and Count Four, seeking declaratory judgment that the Terms of Service are void as an adhesion agreement.

Since Plaintiff Ligeri did not originally register these four accounts, Plaintiff Ligeri and all the Plaintiffs belong to the category of respective successors and assigns. Therefore, Defendants must show actual proof that (a) their records show the original account registrants did indeed consent to the arbitration clause as well as (b) proof and evidence that there was a valid consent by the current account holder and (c) such consent or assignment of rights and duties was acknowledged by and approved by Amazon. This is a question of facts for a judge to find out before concluding the arbitration clause as enforceable. Accordingly, this creates a material dispute of fact that would preclude enforcing the binding arbitration clause that Defendants seek to enforce.

D. Even if Ligeri Did Execute the Arbitration Agreement, Which He Did Not, the Defendants Unilaterally Changed all Global Terms of Performance Such that No Meeting of the Minds Existed, and this court is therefore the Proper Forum

Defendants cite to *Elgar v. Elgar* for generalized formation of contract principles, which the facts in the Plaintiffs' Verified Complaint in addition to its affidavit in opposition demonstrate *Elgar v. Elgar* will not be operative.

*Elgar* relies on Section 188 of 1 Restatement (Second) of Conflict of Laws (1971),

which provides in relevant part: "Law Governing in Absence of Effective Choice by the Parties . . . . "(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: "(a) the place of contracting, "(b) the place of negotiation of the contract, "(c) the place of performance, "(d) the location of the subject matter of the contract, and "(e) the domicil, residence, nationality, place of incorporation and place of business of the parties. "These contacts are to be evaluated according to their relative importance with respect to the particular issue." *Elgar v. Elgar,* 238 Conn. 839, 847 n.8 (Conn. 1996). It is important to note the findings of fact in that case: "The first requirement that must be met in order to satisfy § 187 of the Restatement is that the state whose law is selected must have a substantial relationship to the parties or the transaction, or that there be some reasonable basis for the parties' choice. On the basis of the referee's factual findings, the trial court concluded that New York has a substantial relationship to the parties. We agree with the trial court. The plaintiff was at all times a New York resident and conducted many of her affairs in New York. The decedent spent weekdays in New York and maintained a business in New York. Furthermore, the agreement was executed at the decedent's attorney's office, which is located in New York." *Elgar v. Elgar,* 238 Conn. 839, 851 (Conn. 1996) *Elgar* pertained to antenuptial agreements, which "Under prevailing law and public policy, a duly executed antenuptial agreement is given the same presumption of legality as any other contract, commercial or otherwise. It is presumed to be valid in the absence of fraud . . . . A party seeking to attack the validity of the agreement has the

burden of coming forward with the evidence showing fraud . . . ". *Elgar v. Elgar*, 238 Conn. 839, 852-53 (Conn. 1996)

In this instant case, Connecticut is the physical forum where the parties perform their business activities and access the Amazon accounts. "Moreover, the Defendants have satisfied Connecticut's Long Arm Statute (CGS §52-59b) by doing business directly in this forum with consumers. Plaintiffs operate and do business with the Defendants in this forum by way of shipping operations and via computer networks within this State." See ¶3, Verified Complaint.

E. <u>The BSA Is a Product of Fraud and an Unconscionable Adhesion Contract</u>

It is shocking, in addition to all of the foregoing, that the Defendants have not even attempted to address Count Four, which seeks declaratory judgment that the very terms of the putative contract itself is void as an adhesion contract.

"Amazon also operates as a collections agency, stepping in as a third party middleman to act as the sole mediator and arbiter of all disputes in terms of chargebacks, refunds and other disputes such that neither the Plaintiffs nor any of their customers have any means for remedy but for Amazon's inadequate system and its mandatory binding arbitration provisions of the Terms of Service. Amazon does this primarily for the unlawful, illegal, self serving and nefarious ends complained of herein." Verified Compl, ¶10. " All of Amazon's third-party sellers and most of its vendors are subject to a pre-dispute, binding arbitration clause, requiring them to sign away the right to their day in court if a dispute with Amazon arises. If it were not for Amazon's market power over them the

Plaintiffs and those similarly situated would not agree to these terms." Id ¶62 Such fraudulently induced and unconscionable contract of adhesion must not be enforced.

"Through arbitration, Amazon knows it holds all the cards, and in most ways, has the final say whenever there is a dispute. As a result, sellers rarely initiate arbitration actions against Amazon. Between 2014 and 2019, even as the number of Amazon sellers continued to grow by hundreds of thousands per year, only 163 sellers and 16 vendors initiated arbitration proceedings. Because sellers are generally aware that the process is unfair and unlikely to result in a meaningful remedy, they have little incentive to bring an arbitration action." Id ¶63 Moreover, "Amazon's forced arbitration often fails to provide a legitimate forum for resolving disputes and instead this arbitration process usually serves to insulate Amazon from liability while engaging in wrongdoing – especially because these so-called arbitration proceedings are private. In short, arbitration functions as a way for Amazon to keep disputes within its control, with the scales tipped heavily in Amazon's favor. As such, Amazon can withhold payments from sellers, suspend their accounts without cause, and engage in other abusive behavior without facing any legal consequences for its actions in a legal proceeding." Id, ¶64 This statistics of extremely low filed claims against Amazon through arbitration (findings of a 2020 Congressional investigation) further suggest the adhesion nature and anti-competitive effect of the Amazon terms, which are overwhelmingly in favor of Amazon.[2]

2 Investigation of Competition in Digital Markets, House Subcommittee on Antitrust, Commercial and Administrative Law (Oct 2020) https://s3.documentcloud.org/documents/7222833/House-Tech-Antitrust-Report.pdf

Count Four is clear – undisputedly in fact even – that the Defendants have purposefully built a monopoly with leverage that does not exist on the part of any other company or market participant as described in ¶19~51 of the Verified Complaint. Moreover, "That power of the Defendants was abused to engage in unjust enrichment and unlawful banking activities at the direct expense of the Plaintiffs..." Id, ¶106 It is also clear "That the disproportional bargaining power of the Defendants was used to infringe trademarks..." Id ¶107 "In exercising a superior bargaining power, Amazon confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence." Id, ¶113 "Amazon's Terms of Service themselves are a means to the end of avoiding accountability in the public, open forum of Court where its actions must be explained in a timely, expeditious fashion so that its unjust enrichment, IP infringement, unlawful banking and monopolistic practices come to a halt and victims similarly situated to the Plaintiffs see justice before they see the irreparable harm of losing their entire enterprises, laying off their employees forever and closing their doors for good. ... Finally, as a result of the Terms of Service, the Plaintiffs are placed under the control of the seller, subject to the risk of carelessness by the seller or his agents..." Id, ¶¶114-115 Therefore, the mandatory arbitration clause is a calculated clause and a part of an overall scheme where Amazon can bully third party sellers unfairly without getting caught or being exposed.

Count Four, the facts of which remain entirely undisputed even as the Defendants

ask its unconscionable arbitration provisions to be enforced for the very purposes of its nefarious ends, is unconscionable. "'The doctrine of unconscionability contains both substantive and procedural aspects, and whether a contract or clause is unconscionable is to be decided by the court against the background of the contract's commercial setting, purpose and effect . . . ." (Citation omitted.) *Sablosky v. Edward S. Gordon Co.*, 73 N.Y.2d 133, 138, 535 N.E.2d 643, 538 N.Y.S.2d 513 (1989). This is the result of all of the Defendants cumulative and undisputed business practices both in the formation and the subsequent moving of the goal posts on everything from cost of inventory and storage to when money will be disbursed and up to the actual direct control over Plaintiffs' trade secrets and intellectual property. This is an agreement that was wrong on the formation and profoundly unjust in a most evil sense on the result – the future of Plaintiffs' trademarks, sales and ability to exist, let alone fund an abitration fight rests in the hands of the Defendants. See *Cheshire Mortgage Service, Inc. v. Montes*, 223 Conn. 80, 89, 612 A.2d 1130 (1992) ("[t]he basic test is whether . . . the clauses involved are so one-sided as to be unconscionable" [internal quotation marks omitted]); *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10, 534 N.E.2d 824, 537 N.Y.S.2d 787 (1988) (contract is unconscionable when there is "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party" [internal quotation marks omitted]).

"A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made—i.e., some showing

of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party . . . .'' (Citation omitted; internal quotation marks omitted.) *Gillman v. Chase Manhattan Bank, N.A*., supra, 73 N.Y.2d 10.

The gravaman of the claim in Count Four is that the very agreement Defendants seek to compel arbitrarion under is an openly notorious contract of adhesion and the result of procedural unconscionability in the process of its formation such that its terms are void. See *Sablosky v. Edward S. Gordon Co*., *supra*, 73 N.Y.2d 139 (''claims [of procedural unconscionability] are judged by whether the party seeking to enforce the contract has used high pressure tactics or deceptive language in the contract and whether there is inequality of bargaining power between the parties'').

F. Binding Arbitration is Inadeduate to Protect Irreparable Harm suffered by the Plaintiffs

Arbitration is a fatally imperfect remedy for trademark infringement. Even Amazon itself excludes IP infringement from the arbitration clause. The arbitration process can only serve to delay the ongoing irreparable harm suffered by Plaintiffs that arbitration proceedings cannot adequately or timely correct. "[C]onsumers' negative experiences with products sold under a particular trademark are never completely expunged from their memories. These consumers will justifiably view goods or services offered under the trademark with increased skepticism and hesitancy, having been put on notice that there has been imperfect control over the quality and consistency of such goods in the past. The more widespread and longlasting the trademark infringement becomes, the more customers will have been exposed to these negative experiences that can never be fully

erased." Bernstein & Gilden, supra note 7, at 1054; see also J. Thomas McCarthy, Are Preliminary Injunctions Against Trademark Infringement Getting Harder to Achieve?, 14 Intell. Prop. L. Bulletin. 1, 1 (2009) (defending the presumption of irreparable harm); J. Thomas M. McCarthy , 5 McCarthy on Trademarks and Unfair Competition § 30:47 (4th ed. 2010) (same).

The Plaintiffs have sought an injunction to stop and prevent further irreparable harm of Amazon's trademark infringement actions. Courts in the Second Circuit consider the factors articulated in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961), to determine whether a defendant's use of plaintiff's valid mark is likely to cause confusion. Time, Inc., 173 F.3d at 117. The Polaroid factors are: (1) "the strength of the mark"; (2) "the degree of similarity between the two marks"; (3) "the proximity of the products"; (4) "the likelihood that the prior owner will bridge the gap"; (5) "actual confusion"; (6) "the defendant's good faith in adopting its mark"; (7) "the quality of the defendant's product"; and (8) "the sophistication of the buyers." Id. (internal quotation marks and citations omitted). No single factor is dispositive, nor is a court limited to consideration of only these factors." *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 130 (2d Cir. 2004) (quoting *Polaroid*, 287 F.2d at 495).

The Trademark infringements claims are not relating in any way to the dealing and terms of the Amazon BSA. In fact, most or all of Plaintiffs' claims are based on Defendants' wrongful and illegal conduct not authorized by the service agreement. This expressly includes conduct, trademark infringement, that even the purportedly valid

agreement itself concedes to be properly before this Court.

The arbitration clause is too broad, and lacks specificity to be enforceable under the totality of circumstances of this case. The trademark infringement claims, anti trust claims and Connecticut trade secret claims are not at all the kind of claims that are normally even arbitratable claims. Neither an Arbitrator or Amazon itself can play the governing authoritative role of the USPTO, the federal government (DOJ) and the state government of Connecticut in enforcing these laws and regulations against the violators, which defendants are. The Judicial Branch can interpret these laws and judge if the Defendants are serious violators - and it also has the tools to protect the Parties from irreparable harm while it facilitates the adversarial process of discovery, fact finding and trial. This is a question of fact for a judge to find and determine. This is not a question of fact for an arbitrator to decide because the Arbitration process itself would only delay, frustrate and conceal factual findings indefinitely such that the due administration of justice couldn't be achieved.

There is an immediate need to protect the status quo which the arbitration procedural delays are being imposed by the Defendants to defeat and supplant. An Arbitrator lacks the necessary powers and legal authority to put the USPTO on notice of trademark infringement or to otherwise enter orders in the Registry to vindicate the Plaintiffs. Moreover, Arbitrators lack the power and legal authority to instruct US Customs to impound counterfeit goods brought in by Defendants that unlawfully infringe on the Plaintiffs' Marks.

G. The Vagueness in the Agreement, Even if We Entertain its Validity (Which We Should Not), Should be Construed in Favor of Court Action

Finally, and it bears necessary repeating, it was the Defendants who asked to compel arbitration pursuant to an agreement they purport confines the claims to that sort of proceeding. It is also the Defendants who do not disagree that they offered, authored and drafted the agreement – one that specifically allows trademark disputes to proceed in this Court. It is the FAA (9 USC §2) that requires this Court to interpret contractual disputes pursuant to State Court contract jurisprudence. As the Connecticut Supreme Court has observed, ''[t]his court previously has recognized the significance of the [drafter's] choice in electing to choose shall or may in formulating a statutory directive.'' (Internal quotation marks omitted.) *Cendant Corp. v. Commissioner of Labor*, 276 Conn. 16, 31, 883 A.2d 789 (2005). ''[W]hen the [drafter] opts to use the words 'shall' and 'may' in the same statute, they 'must then be assumed to have been used with discrimination and a full awareness of the difference in their ordinary meanings.' '' *Lostritto v. Community Action Agency of New Haven, Inc*., 269 Conn. 10, 20, 848 A.2d 418 (2004). Here, §18 of Defendants' Exhibit B (ECF 24-4, p. 8) itself concedes "...you or we may bring suit in the Governing Courts to enjoin infringement or other misuse of intellectual property rights."

Defendants want it both ways – their version that says the Parties "may" pursue trademark infringement in this Court, but their version where arbitration must be compelled. 'We accord the language employed in the contract a rational construction based on its common, natural and ordinary meaning and usage as applied to the subject matter of the contract. . . . Where the language is unambiguous, we must give the contract

effect according to its terms. . . . Where the language is ambiguous, however, we must construe those ambiguities against the drafter [sometimes referred to as the contra proferentem rule]. . . . A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous.'' (Citations omitted; internal quotation marks omitted.) *Cantonbury Heights Condominium Assn., Inc. v. Local Land Development, LLC*, 273 Conn. 724, 735, 873 A.2d 898 (2005).

Accordingly, the arbitration provision is not enforceable especially in light of trademark infringement being at the core of the Defendants' scheme, both as alleged and not at all even disputed by any admissible evidence on the part of the Defendants. Just as Trademark infringements fall outside of the intended scope of arbitratable claims in the usual business sense within the terms of service contract, counts 10 is an Anti-trust claim and count 14 is a Connecticut Trade Secret Claim, both of which are also obviously

outside the intended scope of arbitratable clams in the usual business sense within the terms of service contract. Therefore, all of the three counts that the Plaintiffs are seeking injunctive relief on are not within the scope of the arbitration clause.

**III. Conclusion**

The standard for granting a motion to compel binding arbitration is that of summary judgment – a demonstration that no material facts are in dispute.

There is a very clear dispute in what few facts the Defendants are asserting. There isn't a dispute that even the Defendants' own story as to what the Contract says recognizes that Plaintiffs have a right to their day in Court as to the entire scheme of Defendants' attempts to infringe the Marks and poach the entirety of all profits, proceeds, customers and corporate goodwill.

To the extent we look at what the Defendants have presented in evidence, one single declaration, that itself isn't even admissible. It does not satisfy either the Business Records or Computerized Business Records Exceptions to the Hearsay Rule such that it could be admissible. Moreover, the major inaccuracies set forth in that same Declaration submitted by Defendants to delay this case themselves demonstrate that the Declarant is not at all familiar with Amazon's business records or the computer systems that keep and store them in any way sufficient to be competent to testify at an evidentiary hearing.

Even if that wasn't the case – indeed it still is – the Defendants have absolutely ignored and failed their obligation to meet the burden of proof that the basic elements of contract formation existed, and as to Count Four of the Verified Complaint, that the very

provisions complained of the assert to be enforceable are in fact unenforceable.

The motion to compel arbitration should be denied. Based on the same unenforceable contract, the request to change venue to Western District of Washington should also be denied.

FOR THE PLAINTIFFS,
BENJAMIN J LIGERI
CENTRAL CONCEPTS, INC
TRADEMARK HOLDINGS, LLC
GLOBAL SPECIALITY PRODUCTS, LLC
MEDCARE, LLC

By:/s/ Paulus Chan
Paulus H. Chan, Esq.
157 Forest Hill Road,
North Haven CT 06473
Tel: (860) 250-9536
Fax: (860) 631-1111
Email: phc_ssg@yahoo.com

Dated this 6th day of July 2023 at
North Haven, Connecticut