**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

**BENJAMIN LIGERI**
**CENTRAL CONCEPTS, INC**
**TRADEMARK HOLDINGS, LLC**
**GLOBAL SPECIALITY PRODUCTS, LLC** **DOCKET NO. 3:23-cv-00603**
**MEDCARE, LLC**
**Plaintiffs,**

**vs**

**AMAZON.COM, INC**
**AMAZON, LLC**
**AMAZON SERVICES, LLC**
**AMAZON MEXICO SERVICES, INC**
**AMAZON BUSINESS PAYMENTS, INC**
**AMAZON PAYMENTS, INC**
**AMAZON CAPITAL SERVICES, INC,**
**Defendants** **MARCH 29, 2024**

**PLAINTIFFS' PRETRIAL MEMORANDUM**

**I. Evidence to be Presented by Plaintiffs**

The Plaintiffs expect to present the following witnesses and evidence

**A. Witnesses**

(1). Benjamin Ligeri CEO of Central Concepts, Inc.; CEO of Trademark Holdings; LLC; CEO of Global Specialty Products, LLC; CEO of Medcare, LLC, 349 Beach Pond Road Voluntown, Connecticut.

*Summary of Testimony*: The Witness will testify as to the books and business records of the Plaintiffs, which the witness has personal knowledge and control of said records, establishing that there was no agreement made with Amazon as to arbitration of any claims as of the time the Plaintiff's acquired and purchased these Amazon accounts which this Action concerns. The Witness will also testify as the trademark infringement,

and all other areas of testimony of other witnesses in relation to what occurred with the Amazon Accounts other witnesses created or owned prior to the Plaintiffs' ownership. This testimony will include the facts and travel of the post-creation purchases by and for the benefit of the Plaintiffs of the Twin Horses, PrimeMed, My Medical Warehouse, Health and Household and Jasmine's Gifts Amazon Accounts. Mr. Ligeri will demonstrate the process of an account ownership transfer between the old and new account owners via the special Amazon portal.

Mr. Ligeri will further offer testimony as to ¶¶55-66 of the Verified Complaint relative to Defendants' practice that render all of their agreements as unenforceable adhesion contracts (Counts Four and Five, ¶¶105-122). This testimony is directly tied into the means and schemes by which the Defendants infringed the Plaintiffs' Marks and unlawfully acquired Plaintiffs' trade secrets (Counts One, Eleven and Thirteen see also ¶¶16-18, 67-82, and 88-93 of Verified Complaint). In sum, the testimony of Mr. Ligeri will establish and prove that the arbitration and forum clause selection agreements: (1) were not the product of a meeting of the minds or accepted principles of contract formation; (2) were the product of fraud and fraudulent inducement; (3) were overreaching; (4) were permissive because they permit trademark disputes to be resolved by this Court and because the objective of Defendants' conduct and unlawful trade practices was to usurp all rights, revenues and trade secrets associated from Plaintiffs' Marks from Plaintiffs as complained of in Count One. Further, Mr. Ligeri will testify as to the inadequacy of Amazon's systems to address trademark infringement. Verification of Exhibits, Authentication and Admissibility Relative to Witness Testimony: Mr. Ligeri can authenticate

Exhibits Px001 through Px005, Px009 through Px018 and Px021 as business records of the Plaintiffs used in the ordinary course of business and relied upon them in the ordinary course of business. He also executed the Verified Complaint, Px020, based on his examination of business records of Plaintiffs and his own firsthand knowledge. He can verify the police reports Px06 and Px07, which are official records of the Coventry Rhode Island Police Department.

(2). Timothy Mignacca CEO of Wholly Wholesale, LLC 172 Rock Hill Road, Coventry, RI 02816

*Summary of Testimony*: The witness will testify as to the My Medical Warehouse Account acquired by Plaintiffs, and more specifically, as to its origin and that the Defendants' alleged agreed upon arbitration clause and forum selection clause terms were never transferred to the Plaintiff in this Action. He will also testify as to the inability to access the account.

In sum, the testimony of Mr. Mignacca will be to help establish that none of the Plaintiffs created these accounts or executed the Clickwrap to do so, nor were any of those obligations in the purported agreements assumed by any of the Plaintiffs. He will further testify as to the inadequacy of Amazon's systems to address trademark infringement and corroborate Mr. Ligeri's testimony and experience as an Amazon seller. Verification of Exhibits, Authentication and Admissibility Relative to Witness Testimony: The Witness executed the trademark assignment in Px004.

(3). Natalia Parker Amazon Legal Department 410 Terry Avenue North Seattle, WA 98109-5210, Amazon Litigation Paralegal

*Summary of Testimony*: The witness will testify as to what steps she took to purport to comply with the Computerized Business Records Exception to the Hearsay Rule when she supplied her initial affidavit in support of Defendants' Motion to Compel arbitration along with the facts, travel and investigatory steps taken prior to executing said affidavit. Verification of Exhibits, Authentication and Admissibility Relative to Witness Testimony: Ms. Parker executed the Declaration filed in support of Plaintiff's motion to compel arbitration and for venue transfer, which is now Exhibit Px008. Further, she can authenticate Px011, Defendants' April 2023 Brand Protection Report. She will also verify that the Defendants' purported agreement was authored, offered and drafted by Defendants.

(4). H. Morrow Long, CISSP, CISM, CEH 8 Leatherman Trail, Hamden, CT 06518-2045, Expert Witness

*Summary of Testimony*: To examine and impeach the digital evidence offered by Defendants and to additionally establish that there was no way that the Plaintiffs validity executed the agreements as Defendants' contend. Verification of Exhibits, Authentication and Admissibility Relative to Witness Testimony: Expert Witness' resume is Exhibit Px019, which he can authenticate.

**B. Exhibits**

Exhibit Px001 – Amazon Screenshot 2024-03-08 at 5.03 competing with PrimeMed Product Directly re PrimeMed Cups

Exhibit Px002 – Purchase and Sale Agreement between Plaintiffs and Wholly Wholesale

Exhibit Px003 – Transfer Agreement for Account Associated with Merchant Token A18M4UMTJZGP6

Exhibit Px004 – Trademark Assignments Executed by Timothy Mignacca

Exhibit Px005 – Jasmine Alcantra Agreement to Transfer Accounts

Exhibit Px006 – November 2023 police report

Exhibit Px007 – August 2023 police report

Exhibit Px008 – Declaration of Natalia Parker

Exhibit Px009 – Amazon refusal to take down listing infringing IP

Exhibit Px010 – Amazon Email re Jan 2 2024 refusal to take down infringing IP

Exhibit Px011 – Amazon materials representing that it fights IP infringement

Exhibit Px012 – Email re inability to permit selling of Green Sky Brand

Exhibit Px013 - Dhaval Joshi Email Re Inability to Sell Plaintiffs' Brands through Amazon

Exhibit Px014 – Screenshots and Email, in ability to post PrimeMed Items

Exhibit Px015 - Tiberias Vanguard Application Denied

Exhibit Px016 – Myagi Do infringement listing of socks

Exhibit Px017 – Vanguard Account Deactivated, Funds Withheld

Exhibit Px018 - Letter of Authorization to sell - Darin Schmidt Green Sky

Exhibit Px019 – H. Morrow Long Resume

Exhibit Px020 – Verified Complaint

Exhibit Px021 - US Brand Approval Request for Green Sky Sufficient Docs Supplied

Exhibit Px022 – Federal Trade Commission Complaint against Defendants

Exhibit Px023 – US House Subcommittee Report from Subcommittee on Antitrust, Commercial and Administrative Law of the Committee on the Judiciary of the House of Representatives.

**II. What the Evidence will Establish Relative to Enforcement of Arbitration and Forum Selection**

A. Evidence Relative to Count One Asserted by All Plaintiffs, for Trademark Infringement

The testimony of Mr. Ligeri and Mr. Mignacca will establish that the Defendants are wholly incapable of resolving trademark disputes as Defendants have agreed and that Amazon's processes, adhesion contract and policies lack the ability to administer and

effectively use while Defendants use without authorization and enjoy the benefit of Plaintiffs' own intellectual property rights. Moreover, the testimony of Natalia Parker will establish that even the unilateral and unconscionable terms of Amazons' purported agreements firmly establish the Plaintiffs’ right to assert trademark disputes in US District Court.

Evidence will also be established as to this Count, like each and every other Count, that the Defendants regularly reached into this Connecticut forum, have established warehousing and physical infrastructure in this forum and have a regular presence of employees and economic impact of a permanent duration in this Connecticut forum.

B. Evidence Relative to Count Two Asserted by All Plaintiffs, for Negligence

The testimony of Mr. Ligeri will establish that the Plaintiff, relative to the alleged Amazon agreements, never had a meeting of the minds with the Defendants necessary to form a contract. Moreover, the testimony of Mr. Ligeri and Mr. Mignacca will establish that the Defendants' global business practices and policies provide for no adequate remedy such that their negligence results in the loss, dilution, infringement and diminishment of Plaintiff's intellectual property rights.

The Exhibits (Px011 and Px020) and Witness testimony will establish that Amazon had assumed positive duties to: (a) protect Plaintiffs against trademark infringement; (b) take down listings that offended Plaintiffs' Marks; (c) fairly, accurately and transparently account for Plaintiffs' funds accrued from the sale of items associated with Plaintiffs' Marks; and (d) turn over proceeds from the sale of items associated with Plaintiffs' Marks. The evidence will further establish that the Defendants did not honor those duties,

resulting in the Plaintiffs' damages complained of in the Verified Complaint. These duties are relative to sales, proceeds and infringement of Plaintiffs' marks, and therefore, are subject to this Curt's jurisdiction per Defendants' own purported agreements.

The evidence and testimony as to Counts Four, Five and Seven will inform the conclusion that the Defendants' arbitration and forum selection clauses cannot be enforced as a matter of conscience and law, and because they are necessarily overreaching relative to this Count. This court therefore must find the arbitration clause and forum selection clause unenforceable as to Count two due to its unconscionable and over reaching nature.

C. Evidence Relative to Count Three Asserted by All Plaintiffs, for Recklessness and Gross Negligence

The Exhibits (Px011 and Px020) and Witness testimony will establish that Amazon had assumed positive duties to: (a) protect Plaintiffs against trademark infringement; (b) take down listings that offended Plaintiffs' Marks; (c) fairly, accurately and transparently account for Plaintiffs' funds accrued from the sale of items associated with Plaintiffs' Marks; and (d) turn over proceeds from the sale of items associated with Plaintiffs' Marks. The evidence will further establish that the Defendants radically departed from these duties to a degree such that the Defendants actively started competing directly with Plaintiffs by misappropriating the likeness of products associated with their Marks in addition to actively allowing others to infringe Plaintiffs' Marks per Defendants' Hands off the Wheel (HOTW) approach alleged in ¶56 of the Verified Complaint.

This resulted in the Plaintiffs' damages complained of in the Verified Complaint.

These duties are relative to sales, proceeds and infringement of Plaintiffs' marks, and therefore, are subject to this Curt's jurisdiction per Defendants' own purported agreements.

The evidence and testimony as to Counts Four, Five and Seven will inform the conclusion that the Defendants' arbitration and forum selection clauses cannot be enforced as a matter of conscience and law, and because they are necessarily overreaching relative to this Count.

D. Evidence Relative to Count Four Asserted by All Plaintiffs, for Declaratory Judgment that the Contracts are Adhesion Agreements and Unenforceable

Even the Defendants' testimony and evidence will agree that the subject matter of their agreements involve trademark infringement and regulation, a subject of a type generally thought suitable for public regulation, specifically, the Lanham Act. The Defendants seek to be exculpated from their positive duties and obligations to not infringe Plaintiffs' Marks, allow infringement of others on their Platform of Plaintiffs' Marks or unlawfully withhold the proceeds of Plaintiffs' Marks directly or obtained by others through the process of direct infringement or reverse confusion and dilution of Plaintiffs' Marks.

The testimony from Plaintiffs as well as Defendants and Mr. Mignacca will establish that Defendants are the largest online market place and hold themselves out as open to allowing Plaintiffs to use their platform as a medium for IP regulation. The testimony and evidence will establish that the Defendants possess extreme bargaining power over the Plaintiffs. The testimony and evidence will also demonstrate that the Defendants' very motion to seek to compel arbitration and venue transfer seek that they be exculpated from the Plaintiffs' rights to use this forum to assert their trademark infringement and other

claims. The evidence will further demonstrate that neither the Defendants mechanisms or arbitration have the tools and legal authority  that this Court does have in order to address trademark infringement, such as issuing orders to customs and border patrol to impound counterfeit goods. Most of all, the evidence will demonstrate that the Defendants' very systems and adhesion agreements place Plaintiffs' Marks', trade secrets, inventory, revenue and even credit under the exclusive dominion of the Defendants in order for Defendants to avoid, evade and delay their own legal liability.

The evidence and testimony as to Counts Four, Five and Seven will inform the conclusion that the Defendants' arbitration and forum selection clauses cannot be enforced as a matter of conscience and law, and because they are necessarily overreaching relative to this Count.The purposes and effects of the adhesion contract are profoundly oppressive and unfair. The evidence will also demonstrate that the very function of the Defendants' adhesion contract is to defeat, frustrate and stall claims, especially trademark infringement claims.

E. Evidence Relative to Count Five Asserted by All Plaintiffs, for Connecticut Unfair Trade Practices Act Violations CGS §42-110g

The testimony and evidence will demonstrate that the Defendants used computer networks to reach into this state to have economic impact in this Connecticut forum, and to otherwise engage in activities wherein the Defendants expect to earn substantial revenue in this Connecticut forum as a result of their relationship with Plaintiffs'. Further, the very adhesion agreement the Defendants seek to oppressively assert against Plaintiffs in an overreaching manner is subject to this Count, and in and of itself, constitutes an unfair trade practice because its effect, schemes and results are immoral, oppressive,

unscrupulous and without any countervailing benefits to consumers or other business persons.

The evidence and testimony as to Counts Four, Five and Seven will inform the conclusion that the Defendants' arbitration and forum selection clauses cannot be enforced as a matter of conscience and law, and because they are necessarily overreaching relative to this Count.

F. Evidence Relative to Count Six Asserted by All Plaintiffs, for Negligent Misrepresentation

The evidence presented will demonstrate that the Defendants offered their oppressive terms without disclosing (a) their HOTW approach to customer service and IT enforcement; (b) their intentions and plans to unilaterally change the terms of how storage and inventory charges would change, let alone what the formula to do so was, and without advanced warning; or (c) that the Defendants would be directly diluting Plaintiffs' marks through reverse confusion to directly compete with the Plaintiffs. The Plaintiffs, without knowledge of Defendants schemes, , relied on the representations of Defendants, including their representations that they would adequately police trademark infringement, to their detriment.

The evidence and testimony as to Counts Four, Five and Seven will inform the conclusion that the Defendants' arbitration and forum selection clauses cannot be enforced as a matter of conscience and law, and because they are necessarily overreaching relative to this Count.

G. Evidence Relative to Count Seven Asserted by All Plaintiffs, for Fraud and Civil Theft, CGS §52-564

The evidence presented will demonstrate that the Defendants offered their oppressive terms without disclosing (a) their HOTW approach to customer service and IT enforcement; (b) their intentions and plans to unilaterally change the terms of how storage and inventory charges would change, let alone what the formula to do so was, and without advanced warning; or (c) that the Defendants would be directly diluting Plaintiffs' marks through reverse confusion to directly compete with them. The Plaintiffs, without knowledge of Defendants schemes, relied on the representations of Defendants, including their representations that they would adequately police trademark infringement, to their detriment. Moreover, the fact that this was intentionally done in a scheme to acquire full dominion over Plaintiffs' Marks', trade secrets and entire revenue streams, which relies on the adhesion agreements complained of in Count Four, implicates violation of Connecticut's civil theft statute.

The evidence and testimony as to Counts Four, Five and Seven will inform the conclusion that the Defendants' arbitration and forum selection clauses cannot be enforced as a matter of conscience and law, and because they are necessarily overreaching relative to this Count.

H. Evidence Relative to Count Eight Asserted by All Plaintiffs, for Tortious Interference with Business Expectancies

The evidence presented will demonstrate that the Defendants actively sought dominion over Plaintiff's Marks to (a) misappropriate their likeness to directly compete against the Plaintiffs and (b) shut down the Plaintiffs’ ability to change or modify listings

such that the Marks were rendered unusable which had the effect of tortuously interfering with the Plaintiffs' business expectancies.

The evidence and testimony as to Counts Four, Five and Seven will inform the conclusion that the Defendants' arbitration and forum selection clauses cannot be enforced as a matter of conscience and law, and because they are necessarily overreaching relative to this Count.

I. Evidence Relative to Count Nine Asserted by All Plaintiffs, for Conversion

The evidence presented will demonstrate that the Defendants actively sought dominion over Plaintiff's Marks to convert the profits and proceeds from their use and representations of their likeness. The evidence will demonstrate that this claim is based on trademark infringement, and by extension, it gives rise to a state law claim of conversion. The evidence and testimony as to Counts Four, Five and Seven will inform the conclusion that the Defendants' arbitration and forum selection clauses cannot be enforced as a matter of conscience and law, and because they are necessarily overreaching relative to this Count.

J. Evidence Relative to Count Ten Asserted by All Plaintiffs, for Sherman Anti-Trust Action Violations

The evidence presented will demonstrate that the Defendants actively engaged in a scheme to, over time, build up a monopoly, and in truth, operate as a data company that profits over the misappropriation of trademarks owned by the Plaintiffs and others. The evidence will also show that the gateway into which the Plaintiffs are led are the unilateral adhesion agreements offered to merchants like Plaintiffs, who are then forced into Defendants' own inadequate dispute resolution mechanisms that are wholly incapable of

providing any adequate remedy for trademark infringement and theft of profits and proceeds associated with Plaintiffs' Marks.

The evidence and testimony as to Counts Four, Five and Seven will inform the conclusion that the Defendants' arbitration and forum selection clauses cannot be enforced as a matter of conscience and law, and because they are necessarily overreaching relative to this Count. 15 USC §1127 states, in relevant part, "The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations." To that end, the Plaintiffs proffer to the Court Exhibit Px023 US House Subcommittee Report from Subcommittee on Antitrust, Commercial and Administrative Law of the Committee on the Judiciary of the House of Representatives, in addition to Px021, the actual complaint filed by the Federal Trade Commission, joined by seventeen states,  against the Defendants subsequent to this Action alleging many of the same common facts. Both Exhibits offer the Court an authoritative, poignant and timely interpretation of anti-trust law relative to what the Defendants have done to the Plaintiffs consistent with their Verified Complaint

K. Evidence Relative to Count Eleven Asserted by All Plaintiffs, for Breach of Fiduciary Duty

The evidence presented will demonstrate that the Defendants actively act as and become, through fraudulent inducement and via its unlawful adhesion agreements, the sole trustee of revenues associated with Plaintiffs' trademarks along with the ability to use their Marks, their customer lists, their vendor lists and their sales data and analytics. The evidence will also demonstrate that the claim is based on Defendants plan to misappropriate these assets to infringe Plaintiffs' Marks.

The evidence and testimony as to Counts Four, Five and Seven will inform the conclusion that the Defendants' arbitration and forum selection clauses cannot be enforced as a matter of conscience and law, and because they are necessarily overreaching relative to this Count.

L. Evidence Relative to Count Twelve Asserted by All Plaintiffs, for Unjust Enrichment

The evidence presented will demonstrate that the Defendants actively act as and become, through fraudulent inducement and via its unlawful adhesion agreements, the sole trustee of revenues associated with Plaintiffs' trademarks along with the ability to use their Marks, their customer lists, their vendor lists and their sales data and analytics. The evidence will also demonstrate that the claim is based on Defendants plan to misappropriate these assets to infringe Plaintiffs' Marks. Specific to this count, the claim of unjust enrichment, in the absence of any valid agreement between any of the Plaintiffs vis- a-vis any of the Defendants due to the absence of (a) equal bargaining power, (b) fully and fairly disclosed performance requirements and expectations; (c) valid

offer; (d) valid acceptance; and (e) meeting of the minds.

The evidence and testimony as to Counts Four, Five and Seven will inform the conclusion that the Defendants' arbitration and forum selection clauses cannot be enforced as a matter of conscience and law, and because they are necessarily overreaching relative to this Count.

M. Evidence Relative to Count Thirteen Asserted by All Plaintiff, for Theft of Trade Secrets CGS §§35-51 through 35-53,inclusive

The evidence presented will demonstrate that the Defendants actively act as and become, through fraudulent inducement and via its unlawful adhesion agreements, the sole trustee of revenues associated with Plaintiffs' trademarks along with the ability to use their Marks, their customer lists, their vendor lists and their sales data and analytics. The evidence will also demonstrate that the claim is based on Defendants plan to misappropriate these assets to infringe Plaintiffs' Marks, and in doing so, unlawfully and under false pretense acquire the Plaintiffs' otherwise confidential customer data and vendor lists, all of which the Defendants turn around and directly use these in direct competition against Plaintiffs resulting in reverse trademark confusion and dilution.

The evidence and testimony as to Counts Four, Five and Seven will inform the conclusion that the Defendants' arbitration and forum selection clauses cannot be enforced as a matter of conscience and law, and because they are necessarily overreaching relative to this Count.

**III. Applicable Law for Enforcement of Arbitration and Forum Selection for Each Count**

A. Applicable Law Relative to Count One Asserted by All Plaintiffs, for Trademark Infringement

28 USC §1391(b) (2) states venue may be determined in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." The Defendants (a) transacted business in this State; (b) regularly solicited ongoing business in this State as one or more of the Defendants' agreements actively contemplate in soliciting the Plaintiffs' Marks and revenue derived from their use; (c) derived and sought to derive substantial revenue from business in this State derived from intrastate and interstate commerce; (d) expected, especially in an event they alleged a contractual default, to have real life asset seizure, prejudgment remedy and other consequences relative to the Plaintiff as Guarantor; and (e) used and relied upon “computer network”s as defined in CGS §53-451(a)(3). 15 USC §1121 provides that "The district and territorial courts of the United States shall have original jurisdiction..." over trademark infringement claims. This is the Basic Statutory Forum Selection Criteria.

The Supreme Court has noted “[e]xcept as otherwise provided by law . . . this section shall govern the venue of all civil actions brought in district courts of the United States.” §1391(a)(1)(emphasis added). It further provides that “[a] civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a

substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." §1391(b). When venue is challenged, the court must determine whether the case falls within one of the three categories set out in §1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under §1406(a). Whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in §1391(b)." *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 55-56 (2013) *M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1 (1972) set forth what has become widely accepted across the United States as the standard governing the enforcement of forum selection clauses. A forum selection clause will generally be enforced unless the resisting party shows that enforcement would be "unreasonable or unjust, that the clause [is] invalid for such reasons as fraud or overreaching," or that "enforcement would contravene a strong public policy of the forum in which suit is brought." The Bremen, 407 U.S. at 15. Given that even the Defendants' purported contract where there was no meeting of the minds to form and it was never agreed to, there clearly is no requirement to arbitrate trademark disputes.

B. Applicable Law Relative to Count Two Asserted by All Plaintiffs, for Negligence

In the absence of a valid contract the Basic Statutory Forum Selection Criteria govern. Connecticut choice of law principles "traditionally [adhere] to the doctrine that the substantive rights and obligations arising out of a tort controversy are determined by the

law of the place of injury, or *lex loci delicti*." *O'Connor v. O'Connor*, 201 Conn. 632, 637, 519 A.2d 13 (1986)

C. Applicable Law Relative to Count Three Asserted by All Plaintiffs, for Recklessness and Gross Negligence

In the absence of a valid contract the Basic Statutory Forum Selection Criteria govern, as does the doctrine of *lex loci delicti*. The evidence will establish that all of the economic harm occurred in this venue, so, generally, this is the forum.

D. Applicable Law Relative to Count Four Asserted by All Plaintiffs, for Declaratory Judgment that the Contracts are Adhesion Agreements and Unenforceable

In the absence of a valid contract the Basic Statutory Forum Selection Criteria govern, as does *Hanks v. Powder Ridge Rest. Corp.*, 885 A.2d 734, 276 Conn. 314, 2005), which adopted, in this forum, the widely accepted test articulated by the *California Supreme Court in Tunkl v. Regents of the University of California*, 60 Cal. 2d 92, 383 P.2d 441, 32 Cal. Rptr. 33 (1963)

"[T]he attempted but invalid [release agreement] involves a transaction which exhibits some or all of the following characteristics. [1] It concerns a business of a type generally thought suitable for public regulation. [2] The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. [3] The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. [4] As a result of the essential

nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. [5] In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence. [6] Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of care- lessness by the seller or his agents.'' Id., 98–101.

Accordingly, even forum selection language contained in a contract of adhesion is not ordinarily avoidable in the absence of specific evidence that the clause is fundamentally unfair. *Carnival Cruise Lines,* 499 U.S. at 592. That the contract containing such language was entered into on a "take-it-or-leave-it" basis, and was not the subject of bargaining, however, is generally a relevant consideration in determining whether to enforce a forum selection clause. Restatement (Second) of Conflict of Laws, Section 80, Comment c (1971 and rev. 1989).

Generally, mere inclusion of the clause in a contract of adhesion will not defeat its enforcement unless the resisting party can show that the clause resulted from the "unfair use of superior power to impose the contract upon the other party" or it was not within the reasonable expectations of that party. *Cal-State Business Products v. Ricoh,* 16 Cal. Rptr. 2d 417, 425 (Cal. App 3 Dist. 1993) (emphasis added). An "unfair" imposition of such a term would likely involve the imposition of a forum selection clause as a means of discouraging legitimate claims. *Carnival Cruise Lines*, 499 U.S. at 595. This is clearly the

case here. Defendants have an overwhelming bargaining power relative to the Plaintiffs and have unfairly use such superior power. It was not within the Plaintiffs reasonable expectation that the adhesion contract would contain and hidden within a thirty-five page document an arbitration clause and a forum selection clause to deprive the Plaintiffs of their basic right to sue in the appropriate court and their basic right to due process.

E. Applicable Law Relative to Count Five Asserted by All Plaintiffs, for Connecticut Unfair Trade Practices Act Violations CGS §42-110g

In the absence of a valid contract the Basic Statutory Forum Selection Criteria govern. The gravamen of this Count is, in major part, the adhesion contract complained of in Count Four.

Section §52-59b(a)(3) authorizes personal jurisdiction over a nonresident who "commits a tortious act outside the state causing injury to person or property within the state ... if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." This is, beyond the clearly evident state of the Record, also a matter of notice for the Court, who will very likely has seen one or more (even many) Amazon vehicles delivering goods during commute from the Courthouse or home on any given day.

F. Applicable Law Relative to Count Six Asserted by All Plaintiffs, for Negligent Misrepresentation

In the absence of a valid contract the Basic Statutory Forum Selection Criteria

govern, as does the doctrine of *lex loci delicti*. "[A]n action for negligent misrepresentation requires a plaintiff to prove that (1) the defendant made a misrepresentation and (2) the plaintiff reasonably relied upon that misrepresentation." *Giametti v. Inspections, Inc.*, 76 Conn. App. 352, 364, 824 A.2d 1 (2003) Under CGS §52-59b (a) (2), a court may exercise personal jurisdiction over a nonresident who "commits a tortious act within the state .... " "Connecticut courts have held that a nonresident commits a tortious act within the state for purposes of§ 52-59b (a) (2) by sending a communication whose content may be considered tortious directly into Connecticut." (Internal quotation marks omitted.) *Rios v. Fergusan*, 51 Conn. Supp. 212,218, 978 A.2d 592 (App. Sess. 2008). "[A] nonresident defendant does not need to be physically present in Connecticut at the time of the commission of the alleged tortious act for him to have commit[ted] a tortious act within the state for purposes of §52-59b (a) (2)." (Internal quotation marks omitted.) Id., 220.

G. <u>Applicable Law Relative to Count Seven Asserted by All Plaintiffs, for Fraud and Civil Theft, CGS §52-564</u>

In the absence of a valid contract the Basic Statutory Forum Selection Criteria govern. See also *Rios v. Fergusan*, supra. The Supreme Court has held that "[f]alse representations entering Connecticut by wire or mail constitute tortious conduct in Connecticut under § 3 3-411 ( c) (4);" *Knipple v. Viking Communications Ltd.,* 236 Conn. 602,610,674 A.2d 426 (1996); which is analogous to §52-59b (a) (2).

H. <u>Applicable Law Relative to Count Eight Asserted by All Plaintiffs, for Tortious Interference with Business Expectancies</u>

In the absence of a valid contract the Basic Statutory Forum Selection Criteria govern. See also *Rios v. Fergusan*, supra. This Count is not precluded by arbitration or

forum selection for the same reasons as Count One, Four and Five.

I. Applicable Law Relative to Count Nine Asserted by All Plaintiffs, for Conversion

In the absence of a valid contract the Basic Statutory Forum Selection Criteria govern. See also *Rios v. Fergusan*, supra. The Court has jurisdiction for the same reasons it does Count One, Four and Five.

J. Applicable Law Relative to Count Ten Asserted by All Plaintiffs, for Sherman Anti-Trust Action Violations

In the absence of a valid contract the Basic Statutory Forum Selection Criteria govern. The adhesion contract complained of in Count Four is in fact part and parcel of the Defendants' monopoly building efforts and schemes. 15 USC §15(a) affords for suit to be filed in this District consistent with the Basic Statutory Forum Selection Criteria.

K. Applicable Law Relative to Count Eleven Asserted by All Plaintiffs, for Breach of Fiduciary Duty

In the absence of a valid contract the Basic Statutory Forum Selection Criteria govern. See also *Rios v. Fergusan*, supra

L. Applicable Law Relative to Count Twelve Asserted by All Plaintiffs, for Unjust Enrichment

In the absence of a valid contract the Basic Statutory Forum Selection Criteria govern. See also *Rios v. Fergusan*, supra. Moreover, the absence of a valid contract gives rise to the Plaintiffs' unjust enrichment claim.

M. Applicable Law Relative to Count Thirteen Asserted by All Plaintiff, for Theft of Trade Secrets CGS §§35-51 through 35-53,inclusive

In the absence of a valid contract the Basic Statutory Forum Selection Criteria govern. See also *Rios v. Fergusan*, supra. CGS §35-52 states, contrary to any Arbitrator's

power to actually do so, in relevant part, "Actual or threatened misappropriation may be enjoined upon application to any court of competent jurisdiction." Moreover, CGS 35-53 states, "(a) In addition to or in lieu of injunctive relief, a complainant may recover damages for the actual loss caused by misappropriation. A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss. "

**III. Conclusion**

As this court examines the existence and validity of an enforceable contract under Connecticut state laws, the court should conclude that The evidence and testimony by the Plaintiffs will show that there is no valid agreement between the Plaintiffs and Defendants for lack of consent and there was no mutual intent and no meeting of the mind pertaining to the clauses of compelling arbitration and or litigating in the District court of Washington state. Alternatively, the evidence will show that the function and effect of any agreement would be, assuming it was valid, would be unenforceable because of the unconscionable, overreaching, oppressive nature and violates public policy, which represents a constructive roadblock to justice and any functional remedy.

FOR THE PLAINTIFFS,
CENTRAL CONCEPTS, INC
TRADEMARK HOLDINGS, LLC
GLOBAL SPECIALITY PRODUCTS, LLC
MEDCARE, LLC

Dated this 29th day of March 2024 at New Haven, Connecticut

By:/s/ Paulus Chan
Paulus H. Chan, Esq.
157 Forest Hill Road,
North Haven CT 06473
Tel: (860) 250-9536
Fax: (860) 631-1111
Email: phc_ssg@yahoo.com

CERTIFICATE OF SERVICE

I, Paulus Chan, certify that a copy of the foregoing was transmitted to Counsel for the Defendants below on or before this March 29, 2024 via PACER's ECF filings system.

/s/ Paulus Chan

Paulus Chan

John M. Magliery
Adam Sgro
Davis Wright Tremaine LLP - NY
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
212-489-8320
Fax: 212-489-8340
Email: johnmagliery@dwt.com