**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

BENJAMIN LIGERI
CENTRAL CONCEPTS, INC
TRADEMARK HOLDINGS, LLC
GLOBAL SPECIALTY PRODUCTS, LLC
MEDCARE, LLC,

Plaintiffs,

- against -

AMAZON.COM, INC
AMAZON, LLC
AMAZON SERVICES, LLC
AMAZON MEXICO SERVICES, INC
AMAZON BUSINESS PAYMENTS, INC
AMAZON PAYMENTS, INC
AMAZON CAPITAL SERVICES, INC,

Defendants.

Case No. 3:23-cv-00603-JAM

**DEFENDANT AMAZON'S PRE-TRIAL BRIEF IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION PURSUANT TO THE FEDERAL ARBITRATION ACT, OR IN THE ALTERNATIVE TO TRANSFER VENUE**

DAVIS WRIGHT TREMAINE LLP
John M. Magliery
Adam Sgro (*pro hac vice*)
1251 Avenue of the Americas, 21st Floor
New York, New York 10020-1104
Ph: (212) 489-8230
johnmagliery@dwt.com
adamsgro@dwt.com

*Attorneys for Defendants Amazon.com, Inc., Amazon.com Services LLC, Amazon Mexico Services, Inc., Amazon Payments, Inc., and Amazon Capital Services, Inc.*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................ 1

FACTUAL RECORD AMAZON WILL ESTABLISH AT TRIAL ........................................ 2

A. Sellers Must Accept the Business Solutions Agreement to Create an Amazon Selling Account. ........................................ 2

B. The Business Solutions Agreement Contains an Arbitration Clause that Requires Arbitration of Plaintiffs' Non-IP Claims, and a Washington Forum Selection Clause for Plaintiffs' IP Claims ........................................ 5

C. The BSA Binds Plaintiffs as Owners and Operators of Amazon Selling Accounts that Agreed to the BSA. ........................................ 7

D. Plaintiffs are Bound by the Business Solutions Agreement Because they had Notice of the BSA. ........................................ 8

E. The Claims Plaintiffs Assert Belong in Arbitration, or for its IP Claims Seeking Injunctive Relief, in a Washington Court. ........................................ 10

ARGUMENT ........................................................ 11

I. Plaintiffs Are Bound by the BSA ........................................ 11

A. Each of the Plaintiffs' Selling Accounts Agreed to the BSA. ........................................ 11

B. Plaintiffs are Bound by the Arbitration Clause because they had Notice of the BSA through their Operation of Plaintiffs' Selling Accounts. ........................................ 14

C. Plaintiffs are Bound by the Arbitration Clause Because They Directly Benefited from the BSA by Operating their Amazon Selling Accounts. ........................................ 16

II. Plaintiffs' Claims in the Complaint Belong in Arbitration Pursuant to the Mandatory Arbitration Clause in the BSA, or in Washington Courts. ........................................ 18

III. The Court Should Only Transfer the Properly Named Amazon Defendants to Arbitration or to the Western District of Washington. ........................................ 21

IV. Amazon's Electronically Stored Business Records are Admissible. ........................................ 22

CONCLUSION ........................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Amazon.com, Inc. v. Sumeet Marketing Inc.*,
2:23-cv-00331-JLR, Dkt. 69 (W.D. Wash. June 16, 2023) ....13

*Antollino v. Morgan Stanley & Co. LLC*,
No. 17-CV-1777 (VLB), 2018 WL 10483434 (D. Conn. May 11, 2018) ....15

*Byrne v. Charter Commc'ns, Inc.*,
581 F. Supp. 3d 409 (D. Conn. 2022) ....12

*Doe v. Project Fair Bid Inc.*,
No. C11-809, 2011 WL 3516073 (W.D. Wash. Aug. 11, 2011) ....12

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) ....12

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
485 F.3d 450 (9th Cir. 2007) ....13

*Magi XXI, Inc. v. Stato della Citta del Vaticano*,
714 F.3d 714 (2d Cir. 2013) ....13

*Martinez v. Bloomberg LP*,
740 F.3d 211 (2d Cir. 2014) ....12

*Matter of Ollag Constr. Equip. Corp.*,
665 F.2d 43 (2d Cir.1981) ....22

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) ....12, 15

*Nicosia v. Amazon.com, Inc.*,
815 F. App'x 612, 613 (2d Cir. 2020) ....15, 16

*Peters v. Amazon Servs., LLC*,
2 F. Supp. 3d 1165 (W.D. Wash. 2013) ....12

*Phoenix Assocs. III v. Stone*,
60 F.3d 95 (2d Cir. 1995) ....22

*Saks Int'l, Inc. v. M/V Exp. Champion*,
817 F.2d 1011 (2d Cir. 1987) ....22

*Schnabel v. Trilegiant Corp.*,
697 F.3d 110 (2d Cir. 2012)....................15

*Shenzen Shileziyou Tech. Co. Ltd. v. Amazon.com, Inc.*,
No. 21-cv-7083-MMC, 2021 WL 5848062 (N.D. Cal. Dec. 9, 2021) ....................12

*Specht v. Netscape Commc'ns Corp.*,
306 F.3d 17 (2d Cir. 2002)....................12

*Spectrum Sports, Inc. v. McQuillan*,
506 U.S. 447 (1993)....................19

*Trina Solar US, Inc. v. Jasmin Solar Pty Ltd.*,
954 F.3d 567 (2d Cir. 2020)....................16

*Unicorn Glob., Inc. v. Golabs, Inc.*,
2021 WL 4712715 (N.D. Tex. July 27, 2021) ....................12

**State Cases**

*E. Udolf, Inc. v. Aetna Cas. & Sur. Co.*,
214 Conn. 741, 573 A.2d 1211 (1990) ....................15

**Federal Statutes**

9 U.S.C. § 1 *et seq.* (Federal Arbitration Act) ....................7

9 U.S.C. § 3....................1

9 U.S.C. § 4....................1

15 U.S.C. § 1 (Sherman Act) ....................11, 18, 19

15 U.S.C. § 14....................19

15 U.S.C. §§ 1114-1125 (Lanham Act)....................19

28 U.S.C. § 1404....................1

**State Statutes**

C.G.S.A. § 42-110b (Connecticut Unfair Trade Practices Act)....................11

**Rules**

Federal Rule of Evidence 803(6) ....................21

**Other Authorities**

https://sellercentral.amazon.com/help/hub/reference/external/1791 ............................................11

https://sellercentral.amazon.com/help/hub/reference/external/G47071 .......................................11

In response to the Court's February 28, 2024, Order Re Evidentiary Hearing for Motion to Compel Arbitration and/or to Transfer Venue (Dkt. No. 50) ("Order"), Defendants Amazon.com, Inc., Amazon.com Services LLC, Amazon Mexico Services, Inc., Amazon Payments, Inc., and Amazon Capital Services, Inc. (collectively, "Amazon")[1] submit this pre-trial brief in support of its motion for an order compelling Plaintiffs Benjamin Ligeri (individually, "Ligeri"), Central Concepts, Inc, Trademark Holdings, LLC, Global Specialty Products, LLC, and Medcare, LLC (collectively, "Plaintiffs") to arbitrate pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3, 4, or, in the alternative, to transfer venue to the Western District of Washington pursuant to 28 U.S.C. § 1404 based on the parties' choice of forum. *See* Dkt. 24.

**PRELIMINARY STATEMENT**

This lawsuit reflects Plaintiffs' attempt to "cherry pick" the benefits of the Amazon Services Business Solutions Agreement ("BSA"), under which Plaintiffs received payments from Amazon for products they sold in the Amazon.com store ("Amazon Store"), while ignoring the correlating obligations Plaintiffs owe Amazon, including the agreement to arbitrate disputes. Plaintiffs' claims must be resolved in arbitration because:

(i) Plaintiffs admittedly own and operate four separate Amazon selling accounts. The registration of each account required acceptance of the BSA, which contains a mandatory arbitration provision. Ligeri and the Entity Plaintiffs,[2] companies he owns and controls, are subject to the BSA as the owners and operators of these selling accounts;

[1] No entity named "Amazon, LLC" or "Amazon Business Payments, Inc." exists. Amazon.com Services LLC answers for Amazon Services, LLC, which does not exist.
[2] The "Entity Plaintiffs" are Central Concepts, Inc, Trademark Holdings, LLC, Global Specialty Products, LLC, and Medcare, LLC.

(ii) Plaintiffs are further bound by the BSA because they had actual and constructive notice of its existence, as shown by the emails Plaintiffs and Amazon exchanged explicitly referencing the BSA, by the notices Amazon provides to sellers about the updates to the BSA, and by Plaintiffs' own admissions in the Complaint in this action; and finally,

(iii) Plaintiffs received the benefits of selling millions of dollars of goods in the Amazon Store under the BSA, repeatedly accepted payments from Amazon under the BSA, and are therefore bound by the obligations of the BSA as well.

The BSA contains a mandatory arbitration provision that is subject to only narrow exceptions. The only relevant carve out here allows sellers to maintain certain intellectual property claims in the Western District of Washington (not the District of Connecticut) to enjoin infringement. Plaintiffs' intellectual property claims, however, seek both monetary and injunctive relief. As a result, all Plaintiffs claims belong in arbitration unless Plaintiffs are willing to split their intellectual property claims into two separate forums.

## FACTUAL RECORD AMAZON WILL ESTABLISH AT TRIAL

### A. Sellers Must Accept the Business Solutions Agreement to Create an Amazon Selling Account.

Through the testimony of its witnesses, Amazon will show that it is impossible to create an Amazon selling account and thus become an Amazon seller without agreeing to the BSA. Amazon.com Services LLC owns and operates the Amazon Store, which is the store for the United States, and Amazon's affiliates own and operate equivalent counterpart international stores and websites. In addition to selling products directly to customers, Amazon allows third-parties to create selling accounts and sell products in the Amazon Store.

Amazon's evidence and testimony will demonstrate that to open an Amazon selling account in the Amazon Store, sellers must first access the selling account creation page on Amazon's Seller Central website at https://sellercentral.amazon.com/.[3] The seller registration process begins with the "Create Account" page, where the prospective seller must choose a login name, provide a password, and provide a verified email address. After that initial page, the prospective seller comes to the "Seller Agreement" page, where the seller provides their legal name and affirmatively agrees to the BSA. To complete registration, a third-party seller must accept and agree to the BSA and the policies it incorporates, which set the terms and conditions under which sellers may sell products in the Amazon Store.

Amazon's witness will testify that before 2019, Amazon required sellers to check a box to confirm agreement to the BSA. From November 2019 to the present, the Seller Agreement page contained a notice stating, "By clicking on 'Agree and continue', you agree to the Amazon Services Business Solutions Agreement …". Amazon provides all sellers with an opportunity to review the BSA before deciding whether to accept its terms.

Amazon will introduce evidence showing how the pre-2019 Seller Agreement page provided a clickable box, immediately adjacent to the BSA hyperlink, informing the seller that clicking the box confirms the seller has "read and accepted" the terms of the BSA, shown as follows:

[3] Seller Central is the portal sellers use to access their Amazon seller account. It provides a centralized location where sellers can track sales including fulfilled by Amazon sales, update and list products, track inventory, manage payments and refunds, download reports, and contact Amazon for seller support.



Legal name
What is a legal name? ›

Seller agreement

I have read and accepted the terms and conditions of the Amazon Services Business Solutions Agreement

If you are an international seller, read this important information

Next

Amazon will introduce evidence showing that the 2019 and onwards Seller Agreement page informs the seller that clicking "Agree and continue" confirms the seller has "agreed" the terms of the BSA, which is immediately accessible through a hyperlink, shown as follows:



Business information

Business location

United States

*If you don't have a business, enter your country of residence.*

Business type

Select an entity type

By clicking on 'Agree and continue', you agree to the Amazon Services Business Solutions Agreement and Amazon's Privacy Notice.
If you use the selling services offered in Amazon's stores other than in Canada, United States, or Mexico, you also agree to the additional terms listed on the International Selling Agreements page with respect to those services.
You agree to the additional terms and conditions of Customer Service by Amazon (CSBA). To help you get started, we automatically enroll you for this service. You will benefit from our established customer service for your self-shipped orders in stores where CSBA is available. We'll inform you of any potential fee in advance via your registered email. You can opt-out of CSBA at any time.

Agree and continue

If the prospective seller does not click to accept the BSA's terms during account registration, they cannot advance through the process, and they cannot create an Amazon selling account.

During the account creation process, the seller must provide Amazon with, among other things, the name of the individual or entity that will be the legal owner of the account, the name of the individual that is acting on behalf of the entity to open the account, and an email address which Amazon will use to correspond with the seller. Furthermore, during account registration, sellers elect certain countries, either by choice or automatically depending on their location and the date of registration, which then allows that seller's account to start the process of listing products for sale on that country's Amazon store. Each of the Plaintiffs' Selling Accounts[4] was approved to sell in the Amazon Store, meaning each had elected the United States.

**B. The Business Solutions Agreement Contains an Arbitration Clause that Requires Arbitration of Plaintiffs' Non-IP Claims, and a Washington Forum Selection Clause for Plaintiffs' IP Claims.**

Amazon periodically updates the BSA, and different versions of the BSA may apply to Amazon's relationship with its sellers depending on the time period.[5] From 2014 through 2023, there have been 41 different versions of the BSA, with only one BSA in effect for the Amazon Store during any period. Amazon will introduce records showing each of the different versions of BSA that were in effect during this time period. This evidence will demonstrate each version of the BSA Plaintiffs' Selling Accounts agreed to at account creation.

Though Amazon has made minor changes to the arbitration provision of the BSA over time, each of the above BSAs is consistent in that it contains a mandatory arbitration clause in

---

[4] The "Plaintiffs' Amazon Selling Accounts" are Twin Horses, Health and Household, Home and Medical Vanguard, and Medcare Industries.

[5] Each of Amazon's BSAs contain a modification provision in Paragraph 15 or 16 allowing Amazon to modify the BSA on notice to sellers. Amazon's testimony and records will show that each time Amazon updated the BSA, it provided notice to its sellers, including Plaintiffs, as set forth below.

Paragraph 18 or 19 requiring the parties' disputes to be "resolved by binding arbitration." The language of the, November 24, 2022,[6] BSA unmistakably states that arbitration is required, absent three specific narrow carveouts:

> If the Elected Country is the United States, Canada, or Mexico, Amazon and you both consent that any dispute with Amazon or its Affiliates or claim relating in any way to this Agreement or your use of the Services will be resolved by binding arbitration as described in this paragraph, rather than in court, except that (i) either party may elect to proceed in small claims court that is a Governing Court if your claims qualify; (ii) you or we may bring suit in the Governing Courts, submitting to the jurisdiction of the Governing Courts and waiving our respective rights to any other jurisdiction, to enjoin infringement or other misuse of intellectual property rights; and (iii) we may bring any claims related to your sale of counterfeit products on the Amazon Site in the Governing Courts and seek any remedy available under law related to those claims.

Each of the applicable BSAs only provides for certain narrow exceptions that allow suits to be filed in court where: (i) a seller files a claim in small claims court; (ii) either party files a suit "to enjoin infringement or other misuse of intellectual property rights;" and, in the BSAs from September 2021 onwards, (iii) Amazon claims damages related to a seller's sale of counterfeit products.[7] The different versions of the BSA consistently define "intellectual property rights" as "any patent, copyright, Trademark, domain name, moral right, trade secret right, or any other intellectual property right arising under any Laws and all ancillary and related rights, including all rights of registration and renewal and causes of action for violation, misappropriation or infringement of any of the foregoing."[8]

---

[6] The November 24, 2022 BSA is the one that is applicable to this dispute because it is the version in effect when Amazon blocked Plaintiffs' Selling Accounts.

[7] This third carveout does not apply to seller's lawsuits filed against Amazon.

[8] "Trademark" is defined as "any trademark, service mark, trade dress (including any proprietary "look and feel"), trade name, other proprietary logo or insignia, or any other source or business identifier, protected or protectable under any Laws."

A claim that falls into one of these exceptions that is filed in court must be filed in the "Governing Courts," which each BSA defines as "the state or Federal court in King County, Washington." Each of the BSAs is governed by the "Governing Laws," which are "the laws of the State of Washington, United States together with the Federal Arbitration Act and other applicable federal law (if the Elected Country is Canada, Mexico, or the United States)."

### C. The BSA Binds Plaintiffs as Owners and Operators of Amazon Selling Accounts that Agreed to the BSA.

There is no dispute that each of the Entity Plaintiffs own and operated one of the Plaintiffs' Amazon Selling Accounts, that Ligeri is the owner of the Entity Plaintiffs, and that he does business with Amazon through their selling accounts. *See* Compl. at ¶¶ 1, 5-6. Amazon's business records show that each of the Entity Plaintiffs own the following accounts:

| **Account Name**[9] | **Registration Date** | **Legal Name of Account Owner** | **Elected USA** | **Account Accepted BSA** |
|---|---|---|---|---|
| Twin Horses | 1/30/2014 | Trademark Holdings LLC | Yes | Yes |
| Health and Household | 3/11/2014 | Central Concepts Inc. | Yes | Yes |
| Home and Medical Vanguard | 6/22/2017 | Global Specialty Products, LLC | Yes | Yes |
| Medcare Industries | 12/8/2019 | Medcare LLC | Yes | Yes |

Amazon's business records further show that both the Twin Horses and Health and Household Selling Accounts used the name "Benjamin J. Ligeri" as the individual person who was the primary account user, and thus the individual operating the accounts on their behalf. The

[9] Amazon requires each selling account to be registered under a unique name, and assigns each selling account a unique identification number. The account names selected by third-party sellers do not necessarily reflect the legal names of their businesses. Sellers can change the account name, but the unique identification number assigned by Amazon stays the same.

Health and Household and Home and Medical Vanguard both provided Amazon with credit cards for payment accounts under using Plaintiff Ligeri's name as far back as 2016.

The BSA prohibits assignment of seller accounts and renders any such assignments as a nullity. But, the BSA also provides that it binding on any successors and assigns. Plaintiffs argue that they are not bound by the BSA because they illicitly purchased accounts someone else registered—avoiding the registration process while accruing all the BSA's benefits in violation of its plain terms. The evidence will make clear that Plaintiffs cannot avoid the obligations of the BSA on this basis.

**D. Plaintiffs are Bound by the Business Solutions Agreement Because they had Notice of the BSA.**

Plaintiffs were undoubtedly aware that they operated their Amazon selling accounts pursuant to the BSA. Amazon will show that Plaintiffs inevitably gained knowledge of the BSA through their email communications with Amazon, through the notices of BSA updates Amazon provided Plaintiffs in Seller Central, through the consistent and convenient accessibility of the BSA in Seller Central, and through common sense.

Plaintiffs' regular communications with Amazon during the parties' transaction of business demonstrates that, without question, Plaintiffs were aware they were doing business with Amazon pursuant to the BSA, repeatedly accepting payments from Amazon for products Plaintiffs sold in the Amazon Store. Amazon will introduce records of over 100 email communications with Plaintiffs' Selling Accounts that explicitly reference the BSA. These email communications took place from 2017 through 2023, and Amazon sent them to the email addresses associated with each of Plaintiffs' Selling Accounts.

Amazon will further introduce two communications in which Plaintiffs expressly reference and acknowledge the BSA's applicability. Amazon will introduce an email sent to

Amazon on October 12, 2020, from the Twin Horses Selling Account *by Ligeri* which states in part (emphasis added):

> ASIN: B07CSNSWJX Complaint ID: 7413889481 **Additional information Ben Joseph CEO, Medical Collaborative** 100 Commerce Park Rd North Kingstown, RI 02852 MyMedicalWarehouse@gmail.com October 12, 2020 Dear Seller Performance Team: I am writing this appeal for reinstatement of a listing on my Amazon Seller Account entitled My Medical Warehouse, Merchant Token Number AZRQC67FZ69L7 (the "Account"). I use the Account to sell products for my business, Medical Collaborative, which sells a range of medical equipment. Unfortunately, one of my listings has recently been deactivated, and it is in reference to that listing that I write to you today. This listing is one of our top sellers and has been in service for over three years with no problems up until this point. **The listing was deactivated on September 23, 2020, in accordance with Amazon Services Business Solutions Agreement due to the following issue**….

Amazon will also introduce a second email sent to Amazon on February 10, 2023, from the Health and Household Selling Account which states in part (emphasis added):

> Subject: Request for Reinstatement of Seller Account - Health and Household Dear Amazon Support Team, I hope this email finds you well. I am writing to request the reinstatement of **my seller account Health and Household, which was deactivated in accordance with section 3 of Amazon's Business Solutions Agreement**.

These communications leave no doubt that Plaintiffs were aware of the BSA, and their obligations to comply with it. As Ligeri is the principal and owner of each of the Entity Plaintiffs, his knowledge of the BSA equates to knowledge by each entity.

The evidence will further show that Plaintiffs were aware of the BSA through the notices Amazon provides to Sellers with each major update to the BSA. Each time Amazon issues a major update to the BSA, it provides a notice on Seller Central website. The notice informs sellers of the specific changes to the BSA. The notice is posted at least 15 days before the date the new BSA enters into effect, and remains visible on the Seller Central landing page until the update for the next the BSA update goes into effect.

Amazon will introduce as evidence each of the notices Amazon posted to Seller Central to alert Seller of the updates to the BSA in from 2020 to 2023, which were available at:

https://sellercentral.amazon.com/help/hub/reference/external/G47071. Amazon will introduce evidence showing that sellers can easily access the current version of the BSA through Seller Central at the URL: https://sellercentral.amazon.com/help/hub/reference/external/1791.

### E. The Claims Plaintiffs Assert Belong in Arbitration, or for its IP Claims Seeking Injunctive Relief, in a Washington Court.

Plaintiffs' Complaint asserts the following claims, all of which are subject to mandatory arbitration under the BSA, at least in part: (i) trademark infringement; (ii) negligence; (iii) recklessness and gross negligence; (iv) declaratory judgment that the terms of service are a voidable adhesion contract; (v) violation of the Connecticut Unfair Trade Practices Act; (vi) negligent misrepresentation; (vii) fraud and civil theft; (viii) tortious interference with business expectancies; (ix) conversion; (x) violation of the Sherman Act (antitrust); (xi) breach of fiduciary duty; (xii) unjust enrichment; and (xiii) theft of trade secrets. Dkt 1 at ¶¶ 92-172.

The carveout to the BSA's arbitration clause only applies to claims "to enjoin infringement or other misuse of intellectual property rights." Plaintiffs seek injunctive relief in only their First, and Tenth through Thirteenth Claims. Three of those claims, violation of the Sherman Act, breach of fiduciary duty, and unjust enrichment, are not based on Amazon's misuse or infringement of such intellectual property rights. The remaining two claims for trademark infringement and theft of trade secrets assert claims for monetary relief and injunctive relief, only the latter of which falls into the arbitration carveout.[10]

[10] The Court has already dispensed with Plaintiffs' motion for a TRO, denying it as moot. *See* June 22, 2023, Memorandum of Conference and Order (Dkt. 21) ("In light of the parties' agreement that it makes sense for the Court first to address the motion to arbitrate and/or for transfer before addressing the plaintiffs' motions for injunctive relief, the Court DENIES as moot and without prejudice to renewal plaintiffs' motions for temporary restraining order (Doc. # 12) and motion for hearing (Doc. # 17)").

## ARGUMENT

### I. Plaintiffs Are Bound by the BSA.

Plaintiffs are bound by the BSA, including the arbitration provision, as direct contract parties – either as successors and assigns of their assignors, or because they were on actual or constructive (inquiry) notice of the terms of the BSA and assented. Alternatively, even if they did not directly agree to the terms of the BSA, they are bound by the "direct benefits" doctrine.

#### A. Each of the Plaintiffs' Selling Accounts Agreed to the BSA.

The question of whether Plaintiffs agreed to arbitrate "is determined by state contract law principles." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (citing *Specht v. Netscape Commc'ns Corp*., 306 F.3d 17, 27 (2d Cir. 2002)); *see First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally ... should apply ordinary state-law principles that govern the formation of contracts." (internal citations omitted)).

By its terms, Washington law applies to the BSA. Washington law recognizes the enforceability of "click wrap" contracts such as the BSA. *See, e.g., Doe v. Project Fair Bid Inc.*, No. C11-809, 2011 WL 3516073, at *4 (W.D. Wash. Aug. 11, 2011) ("This kind of 'clickwrap' agreement has been upheld in several cases in this circuit and elsewhere."). The BSA is equally enforceable even if Connecticut law applies. *See, e.g., Byrne v. Charter Commc'ns, Inc*., 581 F. Supp. 3d 409, 417 (D. Conn. 2022) (compelling arbitration where plaintiffs clicked "I agree" to the general terms and assented to arbitration). Courts have repeatedly held that Amazon's BSA is an enforceable contract. *See, e.g., Shenzen Shileziyou Tech. Co. Ltd. v. Amazon.com, Inc*., No. 21-cv-7083-MMC, 2021 WL 5848062, at *2-3 (N.D. Cal. Dec. 9, 2021) (compelling arbitration of Amazon third-party sellers' claims because "upon registering their seller accounts, they each agreed to abide by the terms of the BSA"); *Peters v. Amazon Servs., LLC*, 2 F. Supp. 3d 1165,

1173 (W.D. Wash. 2013), aff'd, 669 F. App'x 487, 488 (9th Cir. 2016) (compelling arbitration of sellers claims, finding "Ms. Peters agreed to the BSA when she opened her seller account in October 2012. Mr. Lane did so four times from June 2012 to January 2013. Indeed, neither could have opened their accounts without agreeing to the BSA"); *Unicorn Glob., Inc. v. Golabs, Inc.*, 2021 WL 4712715, at *2 (N.D. Tex. July 27, 2021) (compelling arbitration of seller claims because "the BSA asked Golabs to click a box indicating it read and accepted the terms and conditions [and] Washington law allows for similar 'clickwrap' contracts").

Plaintiffs are bound by the BSA because Plaintiffs' Selling Accounts affirmatively accepted and agreed to the BSA during their registration. *See Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014). Amazon's business records show that (i) Trademark Holdings LLC owns the Twin Horses account that was opened on January 30, 2014, (ii) Central Concepts Inc. owns the Health and Household account that was opened on March 11, 2014; and (iii) Global Specialty Products, LLC owns the Home and Medical Vanguard account that was opened on June 22, 2017. To register with Amazon as sellers, the users of the accounts were required to check a box to confirm agreement to the BSA, and provided an opportunity to review the BSA and its arbitration clause before accepting it. Similarly, Amazon's business records show that Medcare LLC owns the Medcare Industries account that was opened on December 8, 2019. To register with Amazon as a selling account, the user of the account was required to click "Agree and continue" to confirm agreement to the BSA, and provided an opportunity to review the BSA and its arbitration clause before accepting it.

The Entity Plaintiffs are bound by the BSA as owners of these accounts. The BSA specifically states in Section 18 that the BSA may not be assigned, but in the event of any assignment that it is "binding on, inure to, and be enforceable against the parties and their

respective successors and assigns." Thus, any claim that Plaintiffs did not open the accounts is irrelevant, as they are bound by the BSA regardless.

Ligeri is equally bound by the BSA as a closely related party to the Entity Plaintiffs. *Magi XXI, Inc. v. Stato della Citta del Vaticano,* 714 F.3d 714, 723 (2d Cir. 2013) (enforcing a forum selection clause against a non-signatory to a contract when the non-signatory is closely related to the signatory); *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007); *Amazon.com, Inc. v. Sumeet Marketing Inc.,* 2:23-cv-00331-JLR, Dkt. 69 at *8 (W.D. Wash. June 16, 2023) (finding the principals who signed the BSA on behalf of the companies they controlled are bound by the BSA as closely related parties).

Amazon's records for both the Twin Horses and Health and Household Selling Accounts show the accounts have as the primary user "Benjamin J. Ligeri". Amazon's records show that the Health and Household and Home and Medical Vanguard both provided Amazon with credit cards using Plaintiff Ligeri's name as far back as 2016. Ligeri admits that he "does business through" the Entity Plaintiffs and their selling accounts, licenses his trademarks to the Entity Plaintiffs for use in the Amazon Store, claims to have opened one of the selling accounts, and is a personal guarantor of one of the Entity Plaintiffs' loans taken out in connection with their business in the Amazon Store. Complaint at ¶¶ 1, 4, 5, 13. Indeed, Ligeri's claims in the Complaint are completely indistinguishable from those of the Entity Plaintiffs. These facts demonstrate that, Plaintiff Ligeri operated the Selling Accounts, and was aware of the BSA and its terms. Thus, it is fantastic, and not credible, to argue that while the Entity Plaintiffs had knowledge of the BSA, he somehow remained ignorant of its existence and is not bound. These assertions are belied by Ligeri's own credit card numbers being used for Plaintiffs' accounts and for communications sent directly from Ligeri to Amazon about the selling accounts.

### B. Plaintiffs are Bound by the Arbitration Clause because they had Notice of the BSA through their Operation of Plaintiffs' Selling Accounts.

Plaintiffs are bound by the BSA and its arbitration provision even if they did not create Plaintiffs' Selling Accounts. There is no dispute that each of the Entity Plaintiffs operated one of the Plaintiffs' Amazon Selling Accounts, or that Ligeri is the owner and principal of each of the Entity Plaintiffs. *See* Complaint at ¶¶ 1, 5-6. Each time Amazon introduced a substantive update to the BSA (which it did 11 times from 2014 through 2023), it posted a notice to Seller Central prior to the update.

Amazon regularly communicates with its sellers via the email address they provide to Amazon and use to log into their selling accounts. Amazon's communications with Plaintiffs show that Ligeri, and through Ligeri the Entity Plaintiffs, all had actual notice of the BSA and that their business with Amazon as third party sellers was pursuant to that agreement. Between 2017 and 2023, Amazon send Plaintiffs over 100 emails referencing the BSA and its terms. Thus, it is impossible that Plaintiffs were somehow unaware of the BSA.

Plaintiffs' knowledge of the BSA is evident by the fact that at least two of Plaintiffs' Selling Accounts[11] sent communications to Amazon, which explicitly acknowledge and reference the BSA, including one in which the sender—identifying himself as Plaintiff Ligeri—stated: "Additional information Ben Joseph [Ligeri] CEO.... The listing was deactivated on September 23, 2020, in accordance with Amazon Services Business Solutions Agreement…". Ligeri's knowledge of the BSA can be imputed to each of the Entity Plaintiffs. *See E. Udolf, Inc. v. Aetna Cas. & Sur. Co.*, 214 Conn. 741, 748, 573 A.2d 1211, 1214 (1990) ("The knowledge of

[11] The Twin Horses Selling Account owned by Trademark Holdings LLC, and the Health and Household Selling Account owned by Central Concepts Inc.

individual officers and employees at a certain level of responsibility will be deemed the knowledge of the corporation") (citations and quotations omitted).

Given their knowledge of the BSA, even if Plaintiffs did not read the terms of the BSA, they are bound by the arbitration clause it contains under inquiry notice. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016) ("Where there is no actual notice of contract terms, an offeree is still bound by the provision if he or she is on inquiry notice of the term and assents to it through the conduct that a reasonable person would understand to constitute assent.") (citations and quotations omitted). The "touchstone" of the analysis is whether reasonable people in the position of the Plaintiffs would have known about BSAs arbitration provision terms and the conduct required to assent to it. *Antollino v. Morgan Stanley & Co. LLC*, No. 17-CV-1777 (VLB), 2018 WL 10483434, at *3 (D. Conn. May 11, 2018). Here, a reasonable person who understood that they were doing business with Amazon pursuant to the BSA would have reviewed its terms. Plaintiffs' purported failure to do so is unreasonable. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 124 (2d Cir. 2012) ("What constitutes sufficient inquiry notice of a term not actually read by the offeree depends on various factors including, but not limited to, the conspicuousness of the term, the course of dealing between the parties, and industry practices.").

The Second Circuit has already heard arguments similar to Ligeri's arguments here – and rejected them. In *Nicosia v. Amazon.com, Inc.*, 815 F. App'x 612, 613 (2d Cir. 2020) ("***Nicosia II***"), a customer argued that "he is not bound to the arbitration clause that has been included in Amazon's conditions of use since August 2011 because he never received notice of the clause or manifested his assent to it." Although "[t]he District Court concluded that Nicosia was bound to arbitrate the claims in this case based on a combination of agency principles and equitable

estoppel theories," the Second Circuit instead held that the Amazon customer "was bound by the arbitration agreement based on ordinary principles of notice and assent." *Id*. The Court held that the customer had been made aware of the customer agreement, and *even if not specifically made aware of the arbitration provision*, was bound by continued interaction with Amazon after notice of the contract. The Court specifically noted that the customer "denies ever reading the terms and conditions that included the arbitration clause in connection with making these purchases. That is irrelevant." *Id*. at 614.

Since Ligeri was undeniably on notice of the BSA when he himself referenced it in 2020, when he resumed sales on the Amazon store, he assented to its terms, just as the customer did in *Nicosia II*.

Plaintiffs were plainly on actual or inquiry notice as to the existence of the BSA and its arbitration provision and assented to the BSA, as direct parties to the agreement.

### C. Plaintiffs are Bound by the Arbitration Clause Because They Directly Benefited from the BSA by Operating their Amazon Selling Accounts.

It is clear Plaintiffs assented to the BSA and therefore are parties to it, either as successor and assigns or as parties who had notice of the terms of the BSA and assented.

But even if they did not, Plaintiffs are required to arbitrate their claims as non-parties because they directly benefited from the BSA through the use of Plaintiffs' Amazon Selling Accounts. Direct benefits estoppel allows a party to an arbitration agreement to invoke arbitration against a non-party to the agreement where the non-party has directly benefited from the terms of the agreement in a manner that would make it unfair for the non-party to be able to enjoy the fruits of the agreement without sharing in its obligation to engage in arbitration of disputes. The underlying principle for direct benefits estoppel is that a non-party "'knowingly exploiting an agreement with an arbitration clause can be estopped from avoiding arbitration

despite having never signed the agreement.'" *Trina Solar US, Inc. v. Jasmin Solar Pty Ltd.*, 954 F.3d 567, 572 (2d Cir. 2020) (quoting *MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 61 (2d Cir. 2001)).

It is clear that Plaintiffs knew of the existence of the BSA even if they claim to be willfully blind of its terms, as they have been operating Plaintiffs' Selling Accounts for years, after claiming to have purchased the accounts from third parties, and during all these years accepting regular payment from Amazon pursuant to the BSA. *See* Affidavit of Benjamin Ligeri (Dkt. 25-2). Further, at oral argument, Plaintiffs' counsel agreed with the Court that Plaintiffs knew of the existence of the BSA and that Amazon requires its sellers to agree to it, but instead they merely disputed ever having read or seen it. Dkt. 51, 38:20-24 ("THE COURT: Are you denying that Amazon uses the BSA as the agreement that governs third-party sellers on the website? MR. CHAN: No. No, we're not denying that. We're denying the assertion that plaintiff has seen it, read it, and consented to it."); 41:2-5 ("And the only thing that plaintiff is claiming is he's not bound by the arbitration and the change of venue because he was never shown, he never had a chance to consent to it.").

The Plaintiffs directly benefited from the BSA, even if they claim they never have seen it. Plaintiffs' Selling Accounts could not have been created in the first place without someone agreeing to the BSA during the account creation process. The Entity Plaintiffs' operation of their businesses on Amazon flows directly from the terms of the BSA, and every payment they received from Amazon was made pursuant to the BSA. Ligeri, as the owner and operator of those businesses who he claims to have acquired the Selling Accounts and as the primary user for those accounts, similarly directly benefited from the BSA, including by receiving all the payments from Amazon as the beneficial owner of all the Entity Plaintiffs, as Amazon's sales

records show that Plaintiffs Selling Accounts made hundreds of thousands of dollars in sales per month in 2022.

Ligeri directly asserts each and every Count in the Complaint against Amazon, all of which address the rights and responsibilities of Amazon and its sellers in their business relationship. Any claim that he did not benefit from the BSA is belied by his claims in this case. Thus, Plaintiffs are bound by the arbitration clause in the BSA, and are estopped from cherry-picking the provisions of the BSA they wish to apply to them.

### II. Plaintiffs' Claims in the Complaint Belong in Arbitration Pursuant to the Mandatory Arbitration Clause in the BSA, or in Washington Courts.

The Court's Order directs the Parties to address "why or why not each claim is subject to arbitration and/or transfer in accordance with any forum selection clause." Unmistakably, this case belongs in arbitration, except for certain limited claims for injunctive relief pertaining to two of Plaintiffs' causes of action, should Plaintiffs seek to split those causes of action between a court and arbitration.

The dispute resolution provision in Amazon's BSA contains a mandatory arbitration clause: "Amazon and you both consent that any dispute with Amazon or its Affiliates or claim relating in any way to this Agreement or your use of the Services will be resolved by binding arbitration as described in this paragraph, rather than in court…." *See*, *e.g.*, September 1, 2021, BSA. This arbitration clause is subject to only a few narrow exceptions, only one of which is applicable here, which reads "you or we may bring suit in the Governing Courts, submitting to the jurisdiction of the Governing Courts and waiving our respective rights to any other jurisdiction, to enjoin infringement or other misuse of intellectual property rights." Thus, only Plaintiffs' claims to *enjoin intellectual property infringement* are appropriate for resolution by a court.

To fall within this exception, Plaintiffs must assert those claims in the "Governing Courts," which are the "state or Federal court in King County, Washington." This Court is not one of the Governing Courts. Thus, if any of Plaintiffs' claims fall into this exception, the Court should transfer them to the District Court for the Western District of Washington.

The carveout to the BSA's arbitration clause only applies to claims "to enjoin infringement or other misuse of intellectual property rights." Plaintiffs seek injunctive relief in only their claims for trademark infringement (Count 1), violation of the Sherman Act (Count 10), breach of fiduciary duty (Count 11); unjust enrichment (Count 12), and theft of trade secrets (Count 13). Thus, even though Plaintiffs have tried to improperly dress certain of their common law claims as intellectual property claims, these claims are subject to arbitration because they do not seek injunctive relief.[12]

Plaintiffs' Sherman Act claim is not an intellectual property claim that falls within the arbitration carveout. The BSAs define "intellectual property rights" as "any patent, copyright, Trademark, domain name, moral right, trade secret right, or any other intellectual property right arising under any Laws and all ancillary and related rights, including all rights of registration and renewal and causes of action for violation, misappropriation or infringement of any of the foregoing." Noticeably absent from this list are antitrust claims.

Plaintiffs' Sherman Act claims are based on 15 USC § 1, which "forbids contracts or conspiracies in restraint of trade or commerce," such as price fixing agreements. *Spectrum*

---

[12] For example, though difficult to understand and with little factual basis asserted in support, Plaintiffs base their negligence claim (Count 2) on, among other things, allegations that Amazon had certain duties to them under the Lanham Act, which it failed to satisfy, and that Amazon failed to protect its trade secrets. A claim that Amazon failed to meet its duties under the Lanham Act is merely a trademark claim pled under the wrong name. Plaintiff's allegation that Amazon stole trade secrets is not a negligence claim, but a claim for misappropriation of trade secrets (Count 13). Thus, the Court can readily dispose of Plaintiffs state law claims in Counts 2 through 9 by sending them to arbitration.

*Sports, Inc. v. McQuillan*, 506 U.S. 447, 454 (1993); *see* Complaint, ¶ 145. Plaintiffs allege that Amazon's terms of service are per se illegal because they restrain trade. Thus, this claim is not related to intellectual property infringement, and thus does not fall into the carveout.[13]

Plaintiffs' factual allegations specific to "Monopoly Building Activities of Defendants" (¶¶ 19-51) do not make any allegations regarding infringement of Plaintiffs' trademarks or intellectual property whatsoever. While Plaintiffs' antitrust claim obliquely references "theft and misappropriation of Intellectual Property" (¶ 148), that is wholly insufficient to fit Plaintiffs' Sherman Act claims into the arbitration carveout in the BSA.

Plaintiffs breach of fiduciary duty claim (¶¶ 151-154) contains no reference to Amazon's infringement of any intellectual property rights. The factual allegations underlying this claim in the section of the Complaint titled "Defendants' Breach of Fiduciary Duty" (¶¶ 52-66) show that this claim is based on Plaintiffs' claims that Amazon's systems were defective, Amazon blocked Plaintiffs' accounts, and Amazon improperly withheld funds from Plaintiffs. Thus, this claim properly belongs in arbitration.

Similarly, Plaintiffs' unjust enrichment claim (¶¶ 155-162) also contains no allegations that Amazon infringed Plaintiffs' trademarks, and the factual allegations underpinning this claim (¶¶ 52-58) merely reference Amazon's "embargoing" (blocking) Plaintiffs' Selling Accounts, providing insufficient systems, and withholding funds from Plaintiffs. As such, this claim also belongs in arbitration.

---

[13] Plaintiffs also allege in conclusory fashion a violation of 15 U.S.C. § 14, which outlaws certain discriminatory conduct between merchants, but allege no facts in support of this claim, whether based on misuse of intellectual property or otherwise, and so this claim does not fall into the carveout. Complaint, Complaint, ¶ 150.

Plaintiffs' claims for trademark infringement (Count 1) and misappropriation of trade secrets (Count 13) seek monetary and injunctive relief. Only the Plaintiffs' claims for injunctive relief in these counts fall within the carveout to the BSA. Thus, should Plaintiffs opt to split these claims between arbitration and court, the Court should require Plaintiffs arbitrate their monetary claims related to trademark infringement and misappropriation of trade secrets, but permit them to litigate their claims for injunctive relief.

## III. The Court Should Transfer Only the Properly Named Amazon Defendants to Arbitration or to the Western District of Washington.

The arbitration provision in each version of the BSA unmistakably applies to the signatory's disputes with "Amazon or its Affiliates." *See* September 1, 2021, BSA at Paragraph 18.[14] Thus, it is clear that Plaintiffs' dispute with any Amazon entity belongs in arbitration as discussed above.

The various versions of the BSA only list the following Defendants as contracting parties: (1) Amazon.com Services LLC; (2) Amazon Payments, Inc.; and (3) Amazon Capital Services, Inc. Each BSA defines "Amazon," as the applicable "Amazon Contracting Party" and "any of its applicable Affiliates." *See* September 1, 2021, BSA at 1, General Terms. (In short, Plaintiffs' relationship with any Amazon entity is governed by the BSA.) A seller's Amazon Contracting Party depends on the applicable store in the country in which the seller operates (USA, Mexico, or Canada), and what Amazon services the seller uses. For the USA, the Amazon Contracting Party is Amazon.com Services LLC for selling in the Amazon Store, Fulfillment by Amazon, and Amazon Advertising, and Amazon Payments, Inc., Amazon Capital Services, Inc.,

---

[14] By the BSA's terms, it is binding on the signatory as the applicant creating the Amazon selling account, "or the business employing the applicant (if registering for or using a Service as a business) and any of its Affiliates." *See* September 1, 2021, BSA at 1, General Terms.

or Amazon.com Services LLC for Transaction Processing Services, depending on the transaction. *See* September 1, 2021, BSA at 8, Definitions; 24 Transaction Processing Service Terms. Thus, only Amazon.com Services LLC, Amazon Payments, Inc., and Amazon Capital Services, Inc are properly named as Defendants. Regardless, per the BSA's terms, Plaintiffs' dispute with *any* Amazon entity are covered by the BSA's arbitration clause.

**IV. Amazon's Electronically Stored Business Records are Admissible.**

Amazon will introduce at trial its business records in the form of electronically stored information through the testimony of witnesses who use these types of records regularly in their positions at Amazon. These records are admissible under Federal Rule of Evidence 803(6), which allows business records to be admitted "if witnesses testify that the records are integrated into a company's records and relied upon in its day to day operations." M*atter of Ollag Constr. Equip. Corp.*, 665 F.2d 43, 46 (2d Cir.1981) (stating the Rule "favors the admission of evidence rather than its exclusion if it has any probative value at all") (citations, quotations, and alterations omitted).

Furthermore, the custodian need not have personal knowledge of the actual creation of the document to be competent to introduce that record. *See Phoenix Assocs. III v. Stone*, 60 F.3d 95, 101 (2d Cir. 1995). As long as the witness is sufficiently familiar with the business practices of Amazon to establish that the records were of were made as part of that practice, the witness is competent to lay the foundation for those records, and they are admissible. *Id.*; *Saks Int'l, Inc. v. M/V Exp. Champion*, 817 F.2d 1011, 1013 (2d Cir. 1987) ("there is no requirement that the person whose first-hand knowledge was the basis of the entry be identified, so long as it was the business entity's regular practice to get information from such a person"). Amazon's witnesses will testify that the records they are introducing were created in the ordinary course of Amazon's business, the exhibits are an accurate representation of Amazon's records, and, should Plaintiffs'

question the accuracy of the records, that Amazon's records "have sufficient indicia of trustworthiness to be considered reliable." *Id.*

## **CONCLUSION**

Each of the Plaintiffs Selling Accounts agreed to the BSA and its terms—including the arbitration agreement—when they registered with Amazon. Plaintiffs are bound to the BSA as owners of the accounts, and as successors to any person who they claim to have purchased the accounts from. Plaintiffs further had both actual and inquiry notice of the BSA through their communications with Amazon and the BSA's consistent availability in Seller Central. As such, Plaintiffs are bound by the BSA and its arbitration provision. All of Plaintiffs' claims fall within the binding arbitration provision. Only Plaintiffs' claims for injunctive relief for alleged trademark infringement and misappropriation of trade secrets, should they seek to split these claims between court and arbitration, fall outside its scope. Nonetheless, these claims belong in the Western District of Washington under the forum selection clause in the BSA.

Dated: New York, New York
March 29, 2024

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: *_/s/ John M. Magliery_*
John M. Magliery (CT29798)
1251 Avenue of the Americas, 21st Floor
New York, New York 10020-1104
Ph: (212) 489-8230
johnmagliery@dwt.com

Adam Sgro (*pro hac vice)*
adamsgro@dwt.com

*Attorneys for Defendants Amazon.com, Inc., Amazon.com Services LLC, Amazon Mexico Services, Inc., Amazon Payments, Inc., and Amazon Capital Services, Inc.*